2001 ME 39

**ESTATE OF Phyllis B. JOHNSON**

**No. CUM–00–378.**

Supreme Judicial Court of Maine.

Argued Nov. 8, 2000.
Decided Feb. 23, 2001.

Paul S. Bulger (orally), Troubh, Heisler & Piampiano, P.A., Portland, for appellant.

Edward L. Dilworth III (orally), Dow's Law Offices, P.A., Norway, for appellee.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Bruce Johnson appeals from a judgment entered in the Cumberland County Probate Court (*Childs, J.*) distributing proceeds from a Florida wrongful death insurance settlement to the Estate of Phyllis Johnson and imposing sanctions against him for misrepresenting the amount of the settlement. He argues that under the Florida wrongful death statute the court erred in allocating the proceeds to the Estate and that it abused its discretion in awarding sanctions. Because we agree that the Probate Court acted beyond its authority in allocating the proceeds to the Estate, we vacate that portion of the judgment and remand for further consideration of sanctions.

[¶ 2] The facts may be summarized as follows: The decedent, Phyllis Johnson, a resident of Falmouth, Maine, died in March 1997 in Florida when as a pedestrian she was struck by an automobile. She was survived by one son, Bruce Johnson, and two grandchildren, Keadron and Srnka, children of her predeceased son, David Johnson. The decedent's will provided for a specific bequest and for the remainder of the estate to be divided in equal shares to sons David and Bruce, in this case with David's share passing to his children. Bruce filed an application for informal probate, through Maine counsel, and was appointed personal representative of the Estate in April 1997.

[¶ 3] In this capacity, he retained Florida counsel to pursue a wrongful death claim in Florida. Although he originally contacted the Florida counsel through Maine counsel, he then asked the Florida counsel to deal directly with him. The Florida counsel reached settlements with three insurance carriers on behalf of Bruce, as personal representative of the Estate, without the necessity of filing any formal wrongful death action in court. He obtained full policy coverage of $10,000 from the insurer of the owners of the vehicle that hit Phyllis, and $25,000 from the insurer of the driver. On November 3, 1997, after deducting the firm's fees and expenses, he sent Bruce, in his capacity as personal representative of the Estate, a check in the amount of $23,273.82. He also obtained full policy coverage of $65,000 ($100,000 less $35,000) from the decedent's insurer who provided coverage for uninsured or underinsured motorists. On November 13, 1997, after deducting the firm's fees, counsel sent Bruce, as personal representative, a check in the amount of $43,333.34.

[¶ 4] In October 1998, Bruce filed a petition for order of complete settlement of estate pursuant to 18–A M.R.S.A. § 3–1001 (1998). The grandchildren filed an objection to the proposed settlement in part because Bruce failed to account for the wrongful death settlement proceeds, to which they argued they were entitled to one-half. The parties eventually agreed on all issues of distribution except the wrongful death settlement. The parties filed a stipulation of facts for purposes of interpreting the Florida wrongful death statute and submitted memoranda of law setting forth their arguments for interpreting the Florida law. The stipulation recited a total recovery of $65,000. The court found that the Estate could recover any funeral or medical expenses incurred, but that there was insufficient evidence to determine any prospective net accumulated earnings for the Estate to recover. It also found that Bruce, in his claim for lost support as a survivor within the meaning of FLA. STAT. ANN. § 768.21(1), had only demonstrated a loss of $9,000 and awarded the remainder of the settlement to the Estate as a "windfall."

[¶ 5] Bruce filed a motion for amendment of the judgment pursuant to ·M.R.

Civ. P. 59(e), and the court allowed additional evidence as to Bruce's claim for loss of parental companionship, instruction, guidance, and mental pain and suffering pursuant to section 768.21(3) of the Florida Statutes. A telephonic hearing of testimony of the Florida attorney was conducted and various records from his file were admitted. During this hearing, the attorney testified that the insurance proceeds were not $65,000, but $100,000, and that proceeds were paid to Bruce as personal representative in two checks, one from the liability insurers for approximately $23,000 and one from the uninsured insurer for approximately $43,000. Based on this revelation, the grandchildren filed a motion for sanctions. The court entered judgment leaving the allocation as originally ordered, $9,000 to Bruce and the balance to the Estate, on the basis that Bruce failed to demonstrate loss of parental companionship. The court also awarded attorney fees to the grandchildren as a sanction against the personal representative. Bruce appeals.

## I. Choice of Law

[¶ 6] As a preliminary matter, there is sufficient justification for the parties and the Probate Court's application of Florida law, rather than Maine law, in this case. Maine has adopted the "most significant contacts and relationships" test provided in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146. *See Collins v. Trius, Inc.,* 663 A.2d 570, 572 (Me.1995). The rule provides: "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties...." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 (1969). The same rule applies in an action for wrongful death. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 175 (1969). "The law selected by application of the rule of section 175 determines how the recovery in an action for wrongful death

shall be distributed." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 177 (1969). In this case, the accident and ensuing death occurred in Florida, and there is no challenge to the application of Florida law.

## II. Distribution of Wrongful Death Settlement Proceeds

[¶ 7] Bruce argues first that the court erred in its interpretation of the Florida wrongful death statute as it concerns how to distribute any "excess" proceeds that the court finds are not supported by the evidence in order to be recoverable under the statute. We agree. Originally, the court found that the excess was a "windfall" and awarded it to the Estate, in effect by default. The court clarified its characterization of the excess as a "windfall" in its subsequent order, but still determined that the excess belonged to the Estate. The court reasoned that the Florida wrongful death statute would have applied if Bruce had brought a court action, but the settlement proceeds were directed to the Estate and became property of the Estate; that Bruce, as the personal representative, had the duty of observing the same standard of care applicable to a trustee under 18-A M.R.S.A. § 7-302; and that the Florida wrongful death statute provides guidance as to the possible beneficiaries of the settlement funds, but that the court cannot base an award of damages on speculation. In effect, the court concluded that Bruce had received more than he was entitled to as a survivor and awarded the balance to the Estate by default. The court rejected Bruce's argument that he was entitled to the excess because no one else could be under the statute and concluded that the record shows that the settlement was paid to the Estate without any special regard for Bruce's potential claims.

[¶ 8] The analysis of the Probate Court is flawed as a matter of law. Although no wrongful death action was filed in Florida, the underlying basis for negoti-

ations with the insurance companies was the liability created by the Florida wrongful death statute. Although the releases signed by the personal representative were more general to reflect that the settlement was for any and all liability resulting from the accident that caused the decedent's death, the personal representative, through Florida counsel, represented to the insurance companies that it was demanding policy limits "for the wrongful death of Phyllis Johnson." Moreover, but for the wrongful death statute, there would be no cause of action in which to recover the insurance proceeds. The right of action and remedy on account of death by wrongful act did not exist at common law, but is purely statutory. *See Florida East Coast Ry. Co. v. McRoberts,* 111 Fla. 278, 149 So. 631, 632 (1933). Thus, in this case, the right of action arising out of the death of Phyllis Johnson is governed by the Florida Wrongful Death Act, FLA. STAT. ANN. §§ 768.16–768.27 (1997). The right of action is limited by and should not be extended beyond the meaning of the terms of the statute creating such cause of action. *See Stokes v. Liberty Mut. Ins. Co.,* 213 So.2d 695, 697 (Fla.1968); *U.S. Fidelity & Guaranty Co. v. Reed Const. Corp.,* 149 So.2d 578, 580 (Fla.Dist.Ct.App.1963). A right of action occurs under the Florida statute "[w]hen the death of a person is caused by the wrongful act, [or] negligence, ... of any person, ... and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued ...." § 768.19. The action must be brought by the "decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death." § 768.20.

[¶ 9] The statute provides that damages may be awarded, in relevant part, as follows:

(1) Each *survivor* may recover the value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the decedent ... may be considered.

. . . .

(3) ... all children of the decedent if there is no surviving spouse, may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury.

. . . .

(5) Medical or funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid them.

(6) The decedent's personal representative may recover *for the decedent's estate* the following:

(a) Loss of earnings of the deceased from the date of injury to the date of death, less lost support of survivors excluding contributions in kind, with interest. Loss of the prospective *net accumulations* of an estate, which might reasonably have expected but for the wrongful death, reduced to present money value, may also be recovered:

1. If the decedent's survivors include a surviving spouse or lineal descendants

. . . .

(b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against her or his estate or that were paid by or on behalf of decedent, excluding amounts recoverable under subsection (5).

. . . .

§ 768.21 (emphasis added). "Survivors" are specifically defined in the statute as "the decedent's spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters." § 768.18(1). "Net accumulations" are defined as

[T]he part of the decedent's expected net business or salary income, *including pension benefits,* that the decedent probably would have retained as savings and left as part of her or his estate if the decedent had lived her or his normal life expectancy. "Net business or salary income" is the part of the decedent's probable gross income after taxes, excluding income from the investments continuing beyond death, *that remains after deducting the decedent's personal expenses and support of survivors,* excluding contributions in kind.

§ 768.18(5) (emphasis added).

[¶ 10] Thus, pursuant to the statute, the insurance companies theoretically could have paid the proceeds to the personal representative for the benefit of (1) Bruce for lost support and/or lost parental companionship, guidance and instruction and mental pain and suffering; (2) the grandchildren if they had been dependent on the decedent; and/or (3) the Estate for loss of prospective net accumulation and funeral expenses. *See* § 768.21(1), (3), and (6). Because the parties do not appeal the court's express or implied findings that there was insufficient evidence to find recovery by the grandchildren as survivors or the Estate for net accumulations, the only remaining categories within the purview of the statute under which the insurance companies could have paid the proceeds would be to Bruce for lost support and/or lost companionship and to the Estate for funeral expenses. The court found that the Estate should recover for any funeral expenses it incurred and the parties do not dispute this finding. The court erred, however, when it found that, although Bruce demonstrated he was a

"survivor" within the meaning of the statute, he did not demonstrate that he was entitled to the remaining proceeds either for lost support or lost parental companionship, instruction, and guidance and thus allocated the "excess" to the Estate. The statute does not include any provision for the distribution of "excess" damages. Although the statute allows some discretion as to what may be considered in calculating the amount of damages, it does not permit discretion in determining the beneficiaries and the types of damages for each of the beneficiaries.

[¶ 11] Although we do not approve of a personal representative, who is required by statute to proceed for the benefit of the survivors and the Estate, acting only to benefit himself as a survivor, such behavior does not affect the outcome of this case. The Florida statute provides a mechanism for other survivors to seek approval of any settlement as to amount or apportionment among the beneficiaries. *See* § 768.25; GREGORY S. HANSEN & CHARLES IAN NASH, LITIGATION UNDER FLORIDA PROBATE CODE, WRONGFUL DEATH CLAIMS § 12.18 (1997) ("If the settlement occurs before a wrongful death action is filed, the court has the authority to approve the settlement agreement and proposed distribution of recovery.") Although the grandchildren did not seek approval in a Florida court, for practical purposes, they asked the Probate Court in Maine to make the determination. Yet, even now they offer no basis for inclusion of themselves as claimants under the statute. In fact, they stipulated that they only received small cash gifts for birthdays and holidays. Nor did they challenge the court's finding that there was insufficient evidence to find recovery by the Estate under § 768.21(6) for net accumulations. Thus, the court erred in looking beyond the statute to distribute proceeds to the Estate.

## III.  Sanctions

[¶ 12] Bruce also argues that the court erred in imposing sanctions on him

"for making payments to himself as the sole survivor entitled to receive the proceeds under Florida law." The court's stated basis for imposing sanctions, however, was its finding that "Bruce Johnson breached his fiduciary [duty] to the Estate by misrepresenting the amount received by the Personal Representative in connection with the wrongful death claim which the Estate pursued in Florida." The court noted "the material nature of his failure to disclose the amount of money he received as Personal Representative." As discussed above, Bruce stipulated that he had received approximately $43,000, after attorney fees, for the settlement of the wrongful death action, and the Probate Court based its original judgment on this stipulated amount. Not until the evidentiary hearing of the Florida attorney on the motion to amend the judgment was it discovered that, ten days before receiving the $43,000, Bruce had directly received as personal representative an additional $23,000 as settlement from other insurers for the same wrongful death action. It is within the Probate Court's discretion to impose sanctions for the personal representative's failure to disclose the true amount of money he received. *See Estate of Dineen*, 1998 ME 268, ¶ 10, 721 A.2d 185, 188; *Estate of Whitlock*, 615 A.2d 1173, 1178 (Me.1992). The Probate Court, however, acted on the assumption that Bruce was not entitled to the total proceeds exclusive of funeral expenses. We remand for further consideration in light of our ruling on the allocation of proceeds.

The entry is:

Judgment vacated with respect to the allocation of proceeds. Judgment vacated with respect to the imposition of sanctions for misrepresentation. Remanded for further proceedings consistent with the opinion herein.