2001 ME 89

**MC ASSOCIATES**

v.

**TOWN OF CAPE ELIZABETH et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 14, 2001.
Decided: June 15, 2001.

Frank K.N. Chowdry, Esq., (orally), Hopkinson, Abbondanza & Baker, Portland, for plaintiff.

Michael H. Hill, Esq., (orally), John J. Wall III, Esq., Monaghan Leahy, LLP, Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] MC Associates (MC) appeals from a summary judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of the Town of Cape Elizabeth[1] on MC's regulatory takings claims. MC argues that the court erred by determining that its federal takings claims are not ripe and that its property has not been deprived of all practical value. Although the

---

1. The defendants in this case include Town of Cape Elizabeth, the Town Council of Cape Elizabeth, the Cape Elizabeth Planning Board, the Cape Elizabeth Board of Zoning Appeals, and Ernest W. McVane, in his capacity as the previous Code Enforcement Officer of Cape Elizabeth. We refer to them collectively as "the Town."

federal claim was ripe, we affirm the judgment because MC generated no genuine issue of material fact with respect to a taking either as a matter of state or federal law.

[¶ 2] The stipulated facts and procedural history of the present dispute may be summarized as follows: In January of 1989, MC acquired a parcel of land located in Cape Elizabeth that it has held for future development and sale as a single-family house lot. In 1990, Cape Elizabeth amended its zoning ordinance to establish protected wetland zones. As amended, the ordinance prohibits housing development within 250 feet of any critical wetland zone not separated from adjacent areas by topographical or other natural features. In 1996, MC applied for a permit to build a single-family residence on the property, but the application was denied because of the property's proximity to the wetland zone. MC requested a verification of the wetland boundary from the Town's Planning Board, and the Planning Board confirmed the application of the 250 foot buffer overlay on MC's property. MC appealed to the Town's Board of Zoning Appeals and also requested a variance. After a public hearing, however, the Board of Zoning Appeals concluded that it did not have authority to hear the appeal from the Planning Board and refused to grant the variance.

[¶ 3] MC then initiated an 80B appeal and asserted six independent claims including takings claims under the United States and Maine Constitutions. The Superior Court first ruled on the administrative appeal, upholding the decisions of the Planning Board and the Board of Zoning Appeals. The Town then moved for summary judgment with regard to the remaining counts. The parties submitted a joint stipulation of facts and acknowledged, among other things, that an appraiser had estimated that MC's property was worth $88,000 as a "buildable" lot and $3000 as a "non-buildable" lot. Based on the stipulated facts, the Superior Court granted the Town's motion for summary judgment. With regard to MC's takings claims, the court reasoned that MC's federal claims were not ripe and that MC's lot had not been deprived of all value because it was not buildable when MC first acquired title and because it retained some economic value. MC appealed, arguing that the court erred in entering summary judgment on its takings claims.

[¶ 4] Both the United States and the Maine Constitutions prohibit the government from taking private property for public use without paying just compensation.[2] U.S. CONST. amend. V; ME. CONST. art. I, § 21. The ordinary exercise of a state's police powers, especially those relating to environmental protection, often affects interests in realty. The government, however, is not required to pay a property owner every time it enacts a law that adversely affects property interests. As Justice Holmes explained in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power." *Id.* at 413, 43 S.Ct. 158.

2. The final clause of Fifth Amendment of the United States Constitution provides, "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. Similarly, Article 1, Section 21 of the Maine Constitution provides that "[p]rivate property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." ME. CONST. art. I, § 21.

This implied limitation, however, is not without limits, and "if regulation goes too far it will be recognized as a taking." *Id.* at 415, 43 S.Ct. 158.

[¶ 5] The determination of whether a particular enactment has gone "too far" in affecting the interests of a complaining property owner "depends largely 'upon the particular circumstances [of the] case.'" *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (quoting *United States v. Cent. Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958)). Relevant factors to be considered in the determination include "the economic impact of the regulation on the claimant ..., the extent to which the regulation has interfered with distinct investment-backed expectations ..., [and] the character of the governmental action." *Id.*

[¶ 6] These considerations involve what are "essentially ad hoc, factual inquiries" into the relative importance of the private and public interests at stake. *Penn Cent.,* 438 U.S. at 124, 98 S.Ct. 2646. Nonetheless, and of particular importance in the present case, there are at least two types of regulatory action, commonly referred to as "categorical takings," that require compensation without such case-specific inquiry: "regulations that compel the property owner to suffer a physical 'invasion' of his [or her] property" and those which "den[y] all economically beneficial or productive use of land." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

[¶ 7] In the present case, relying on the second type of categorical taking, MC argues that, by enacting the 1990 wetlands amendments, the Town has denied it all economically beneficial or productive use of its property. Because MC has the burden of proving its allegations at trial, it must establish a prima facie case for each element of the cause of action in order to survive the Town's motion for summary judgment. *See Champagne v. Mid–Maine Medical Center,* 1998 ME 87, ¶ 9, 711 A.2d 842. If it is clear that the Town would prevail as a matter of law if MC presented nothing more than what was before the court at the hearing on the motion for summary judgment, then the court was correct to enter summary judgment against MC. *See id.* "A judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Id.* The Town maintains that MC has failed to establish a prima facie case for its takings claims because MC's federal claims are not ripe and because MC has not created a genuine issue of fact that its property has been deprived of all value.

## I. RIPENESS

[¶ 8] As the United States Supreme Court noted in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* at 194, 105 S.Ct. 3108. A property owner who maintains that his or her property has been unconstitutionally taken has no claim if the government charged with the taking "has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation.'" *Id.* at 194–95, 105 S.Ct. 3108 (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1013, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)) (alteration in original). Thus, when a state is charged with a regulatory taking, a property owner's Fifth Amendment takings claim for inverse condemnation does

not ripen until he or she has "unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation." *Id.* at 195, 105 S.Ct. 3108. Accordingly, in *Hamilton Bank,* the Supreme Court determined that a property owner's federal takings claims were premature in federal court because it had not availed itself of the state's statutory procedures for recovering for inverse condemnation. *Id.* at 196–97, 105 S.Ct. 3108. Similarly, in *Drake v. Town of Sanford,* 643 A.2d 367 (Me.1994), we ordered the dismissal of the plaintiffs' federal takings claims because, on the first day of trial, the plaintiffs stipulated to a dismissal of their state takings claims. *Id.* at 369. In applying *Hamilton Bank,* we reasoned that because the plaintiffs had dismissed their state claims, their federal claims could never ripen. *Id.*

[¶ 9] In the present case, MC has simultaneously asserted takings claims based on federal and state law. Relying on *Hamilton Bank* and *Drake,* the Town maintains that the Superior Court properly disposed of MC's federal takings claims because they are not ripe until MC shows that its state claims for just compensation have been denied. In essence, the Town urges us to require MC to raise its federal claims in a separate proceeding after its state claims have been finally decided. If we did so, however, collateral estoppel would likely preclude the successful assertion of the federal claims in the subsequent action whether brought in state or federal court. *See* Madeline J. Meacham, *The Williamson Trap,* 32 Urb. Law. 239, 239 (2000); Thomas E. Roberts, *Ripeness and Forum Selection in Fifth Amendment Takings Litigation,* 11 J. Land Use & Envtl. L. 37, 66–67 (1995). We conclude that *Drake* does not require such a result.

[¶ 10] Although state takings claims must be resolved before a federal claim arises, they need not be resolved in separate proceedings in a state court. As a matter of prudence, courts often address federal constitutional issues only after resolving issues arising under the state constitution. *State v. Cadman,* 476 A.2d 1148, 1150 (Me.1984). Read together, *Hamilton Bank* and *Drake* require only that Maine courts do the same when they address takings claims premised on both federal and state law. The Superior Court erred, therefore, when it dismissed MC's federal claims on the basis of ripeness.

## II. LOSS OF ALL BENEFICIAL OR PRODUCTIVE USE

[¶ 11] In this matter, the state and federal claims require the same analysis. The Town argues that MC has not established a prima facie case for a "categorical taking" because it has not shown that the property has lost all value as a result of the imposition of the wetlands amendments. In the context of a categorical taking, we have explained that "[t]he proper procedure for analyzing taking questions is to determine the value of the property at the time of the governmental restriction and compare that with its value afterwards, to determine whether the diminution, if any, is so substantial as to strip the property of all practical value." *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n,* 450 A.2d 475, 482 (Me.1982). A property owner fails to prove a categorical federal or state takings claim if he or she fails to show that the governmental action has "rendered the property substantially useless and stripped it of all practical value." *Wyer v. Bd. of Envtl. Prot.,* 2000 ME 45, ¶ 1, 747 A.2d 192; *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (recognizing categorical taking when regulation "denies all economically beneficial or productive

use of land"). The Town maintains that the ordinance did not render MC's property valueless because, under previously enacted regulations, the property was not buildable before the Town enacted the wetlands amendments and because, based on the stipulated appraisal, the property retains economic value. We consider each of these arguments to determine whether MC has generated a genuine issue of material fact regarding the loss of all value.

A.

[¶ 12] The Town maintains that the lot was not buildable, under the Town's zoning ordinance, when MC acquired title. The zoning ordinance in effect at that time provided that if a house is to be constructed on a nonconforming lot of record that was created "on or before March 12, 1968," the lot "must contain ... not less than 20,000 square feet if not to be served by the public sewer (or otherwise meet the requirements of Section 19-3-3 and the State Minimum Lot Size Statute 12 M.R.S.A. § 4807, et. seq.)." Cape Elizabeth, Me., Zoning Ordinance § 19-3-2(b)(4) (January 1989). The parties have stipulated that the property has existed as a lot of record since 1964, that any home constructed on MC's property will require private sewerage, and that the lot is only 18,570 square feet in area. The issue, therefore, is whether MC has made a prima facie showing that its proposed development "otherwise meet[s] the requirements of Section 19-3-3 and the State Minimum Lot Size Statute 12 M.R.S.A. § 4807, et. seq."

[¶ 13] The sections referred to establish environmental standards for private subsurface waste disposal systems. Section 19-3-3 of the Town's zoning ordinance required that private sewage disposal systems be "designed and constructed in accordance with the requirements" of the Private Sewage Disposal Ordinance. Zoning Ordinance § 19-3-3. Section 4807-A of the State Minimum Lot Size Statute prohibits any person from disposing of waste "from any single family residential unit by means of subsurface waste disposal unless such lot of land on which such single family residential unit is located contains at least 20,000 square feet." 12 M.R.S.A. § 4807-A (1994). A lot smaller than 20,000 square feet "may be used for subsurface waste disposal if approved in writing by the Department of Human Services." § 4807-B.

Approval shall be granted if the applicant for approval demonstrates to the Department of Human Services that, based upon [relevant factors], the proposed subsurface waste disposal will not lower the water quality of or otherwise pose a threat to any lake, pond, stream, river or tidal waters, any underground water supply, or to the public health, safety and general welfare.

*Id.*

[¶ 14] The parties' stipulation of fact reveals that a professional engineer prepared a Department of Human Services Subsurface Wastewater Disposal System Application but that the Town never approved the application. The engineer certified, for purposes of the DHS application, that the proposed sewer system "is in accordance with the Subsurface Wastewater Disposal Rules." The Town argues, nonetheless, that the lot was not buildable as a matter of law because section 4807-D restricts the application of the Minimum Lot Size Statute to lots created after January 1, 1970. The statute provides:

This chapter as to the use of a lot for single family residential purposes shall not apply to any lot which prior to January 1, 1970, was specifically described as an identifiable and separate lot either in the instrument conveying such lot to the

then owner or in a valid and enforceable agreement for purchase and sale or was shown on a plan recorded in accordance with law, prior to January 1, 1970. . . . § 4807–D. The Town is correct that the statute does not apply to lots created before January 1, 1970, and that the exception provided in section 4807–B for lots smaller than 20,000 square feet does not apply to MC's lot.

[¶ 15] It is only the Town's ordinance, in this case, that provides an exception to the ordinance's lot size requirements. The ordinance adopts the "requirements" of the State Minimum Lot Size Statute by reference, but does not limit its applicability to lots created after 1970. No evidence, however, was presented concerning the lot's compliance with section 19–3–3, and, thus, MC failed to present a prima facie case that the lot was buildable before the enactment of the wetlands ordinance.

### B.

 [¶ 16] The Town also argues that MC has not established a prima facie case for a categorical taking because it has not shown that the property has lost all value as a result of the imposition of the wetlands amendments. Whether a categorical taking has occurred by virtue of a landowner being deprived of all economically viable use of his or her property is a predominantly factual question. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). However, the only evidence that MC provided in the summary judgment proceedings to demonstrate the adverse effect of the wetlands amendments on the value of its property was an appraiser's estimate that, after the amendment, the property is worth $88,000 as a "buildable" lot and $3000 as a "nonbuildable" lot. This evidence does not support a finding of a categorical taking. The

appraisal does not even purport to establish the value of the lot prior to the alleged taking, nor does it address whether the lot retains substantial uses other than to support a single-family residence.

The entry is:

Judgment dismissing the federal claim vacated. Remanded for entry of judgment in favor of the Town on the federal claim. In all other respects, the judgment is affirmed.