STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-2017-05 ✓

HAROLD MACQUINN, INC., et. al.,   )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )          DECISION
                                  )
TOWN OF LAMOINE                   )
                                  )
          Defendant.              )

This case was presented to the Court for decision without trial on a stipulated record and based on the written arguments of the parties. Plaintiffs Harold MacQuinn, Inc. ("MacQuinn"), Doug Gott and Sons, Inc. ("Gott"), and John W. Goodwin, Jr., Inc. ("Goodwin"), (collectively, "Plaintiffs") filed their brief on October 2, 2017, and Defendant Town of Lamoine ("Lamoine" or the "Town") filed its brief on November 13, 2017. Plaintiffs timely replied.

**PROCEDURAL POSTURE**

Plaintiffs' one-count Complaint for Declaratory Judgment (the "Complaint") was filed in Hancock County Superior Court on January 27, 2016. The case was transferred here to the Business and Consumer Court upon judicial recommendation and accepted by this Court on February 23, 2017. The first Case Management Conference was held in this Court on April 6, 2017. By that time, the case had been pending for over a year and discovery was substantially complete. The parties agreed to work toward compiling a joint statement of facts and stipulated record for the case to be decided without trial.

Lamoine's brief urged this Court to dismiss Plaintiffs' suit with prejudice on the grounds that Plaintiffs had failed to serve a copy of the proceedings on the attorney general, as required

by statute in a declaratory judgment action involving the validity of a municipal ordinance. 10 M.R.S.A. § 5963. *See Ferraiolo Constr. Co. v. Town of Woolwich*, 1998 ME 179, ¶ 8, 714 A.2d 814. The Court declined to dismiss the Plaintiffs' complaint, and instead ordered Plaintiffs to serve a copy of the Complaint on the attorney general and that the proceedings be stayed to allow the attorney general an opportunity to respond. *Harold MacQuinn, Inc. v. Town of Lamoine*, No. BCD-CV-2017-05 (Bus. & Consumer Ct. Dec. 7, 2017, *Mulhern, J.*). On January 24, 2018, Plaintiffs provided proof of service of the Complaint on the office of the attorney general, along with a copy of correspondence from Assistant Attorney General Kate Tierney indicating that the attorney general would not be participating in the litigation.

## FACTUAL BACKGROUND

Plaintiffs in this case own and operate commercial sand and gravel pits located in Lamoine. MacQuinn, Gott, and Goodwin own and operate six, five, and two gravel pits in the Town, respectively. (J.S.M.F. ¶¶ 1-3; Exs. A, B, C.) Each Plaintiff extracts sand and gravel from these pits, which it then sells for profit at varying prices based on the size of the gravel elements. (J.S.M.F. ¶¶ 10-12; Exs. G, H, I.) Lamoine is a Maine municipal corporation possessing general local government powers and statutory home rule authority under 30-A M.R.S.A. § 2101-2109. (J.S.M.F. ¶ 4.) Prior to March 13, 2013, sand and gravel pits were regulated by the Town pursuant to the Town's Gravel Ordinance, which was originally enacted in March 1982 and revised April 8, 2009 (the "2009 Gravel Ordinance"). (J.S.M.F. ¶ 5; Ex. D.) The Plaintiffs' operational sand and gravel pits in Lamoine were duly licensed by Lamoine under the 2009 Gravel Ordinance. (*Id.*)

On March 13, 2013, at its annual town meeting, Lamoine enacted an ordinance entitled "Lamoine Gravel Ordinance" (the "2013 Gravel Ordinance") (J.S.M.F. ¶ 7; Ex. F.) The 2013

2

Gravel Ordinance amended the 2009 Gravel Ordinance. (J.S.M.F. ¶ 8.) Under section 6, the 2013 Gravel Ordinance was made applicable to "all existing and proposed activities where the scope of excavation, extraction, processing, storage and transportation of sand, gravel, crushed stone, soil and loam exceeds or will exceed one acre or from which more than five hundred (500) cubic yards of material have or will be removed." (*Id.*) This is identical to the applicability of the 2009 Gravel Ordinance. (J.S.M.F. Ex. D.) Both the 2009 Gravel Ordinance and the 2013 Gravel Ordinance apply to all of Plaintiffs' sand and gravel pits. (J.S.M.F. ¶ 5; Exs. A, B, C.)

At issue is section 8(A) of the 2013 Gravel Ordinance, which: (1) increases the setback between the boundary line of the gravel pit property and any excavated areas from fifty feet under the 2009 Ordinance to one hundred feet; (2) imposes a 150-foot setback from any private drinking water supply; and (3) imposes a 1,000 foot setback from any public water supply. (J.S.M.F. Ex. F.) Section 8(A) also modified a provision of the 2009 Gravel Ordinance that allowed the fifty-foot property line setback requirement to be reduced to a minimum of ten feet[1] pursuant to a written agreement with the abutting landowner. (J.S.M.F. Ex. D.) Under section 8(A) of the 2013 Gravel Ordinance, the one-hundred-foot default minimum setback can be reduced to a minimum of fifty feet pursuant to a written agreement with the abutting landowner.[2] (J.S.M.F. Ex. F.) *Compare* 2009 Gravel Ordinance § 8(A) *with* 2013 Gravel Ordinance § 8(A)(1)-(5). (J.S.M.F. Exs. D, F.)

As a result of the newly imposed setback requirements imposed by the 2013 Gravel Ordinance, the potential surface area of extraction for each of the Plaintiffs' previously licensed gravel pits is reduced. (J.S.M.F. Ex. J.) The area from which MacQuinn can extract sand and

---

[1] Except that the distance could not be reduced to less than twenty-five feet from the boundary of a cemetery or burial ground.

[2] This provision of the 2013 Gravel Ordinance expired three years from the effective date of the ordinance. 2013 Gravel Ordinance § 8(A)(1). The record is silent on whether Plaintiffs were able to obtain written permission from any abutting landowners for a reduced setback of fifty feet within the three-year period.

3

gravel has been reduced by 4.6%, 6.6%, and 13.6%; for Gott's properties the reductions are 9.8%, 20.2%, and 7.5%. (*Id.*) Presumably, MacQuinn's and Gott's other sand and gravel pits are unaffected by the increased setback requirements of the 2013 Gravel Ordinance. (*Id.*) The extractable area of Goodwin's two properties is reduced by 41.6% and 8.9%. (*Id.*) In aggregate, the 2013 Lamoine Gravel Ordinance reduces the area from which Plaintiffs may extract sand and gravel by 10.6%. (*Id.*)

## DISCUSSION

Plaintiffs' one-count complaint seeks only declaratory judgment, and presents just one issue for this Court to decide: whether application of the new, increased setback provisions of the 2013 Gravel Ordinance to the Plaintiffs' existing, previously permitted gravel pits in Lamoine constitutes an uncompensated taking of the Plaintiffs' property in violation of the Maine and U.S. Constitutions. *See* Me. Const. art. I., § 21; U.S. Const. amend. V, XIV.

The Maine and U.S. Constitutions prohibit the government from taking private property for public use without paying compensation. *M.C. Assocs. v. Town of Cape Elizabeth*, 2001 ME 39, ¶ 4, 773 A.2d 439. The Legislature of the State of Maine has conveyed a plenary grant of the state's police power to municipalities. *Int'l Paper Co. v. Town of Jay*, 665 A.2d 998, 1001 (Me. 1995) (citing 30-A M.R.S.A. § 3001). In the ordinary exercise of these police powers, a municipality will frequently enact ordinances that affect property values. *M.C. Assocs.*, 2001 ME 39, ¶ 4, 773 A.2d 439. The municipality is not required to pay compensation to a property owner every time it enacts an ordinance that adversely affects property interests. *Id.* However, "if a regulation goes too far, it will be recognized as a taking." *Id.* (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922)). Some government actions are recognized as categorical takings that always require compensation, such as regulations that require a property owner to suffer a

4

physical invasion of her property or that permanently deny a property owner all economically beneficial or productive use of her land. *Id.* (citing *Lucas v. S. C. Coastal Council*, 505 U.S. 1003, 1015 (1992)).

Plaintiffs in this case concede that the 2013 Gravel Ordinance is not a categorical taking. (Pl's Br. 4 n. 5.) Thus, in order to determine whether the 2013 Gravel Ordinance amounts to a taking requiring compensation under the Maine Constitution or the U.S. Constitution, this Court must consider the particular factual circumstances of this case to determine if the regulation goes too far. *Id.* ¶ 5. The relevant factors the Court must consider are: (1) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations; (2) the regulation's economic impact on the property owner; and (3) the character of the government action. *M.C. Assocs.*, 2001 ME 39, ¶ 5, 773 A.2d 439 (citing *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 124 (1978) (the "*Penn Central* factors"). The analysis under these factors is an "essentially ad hoc, factual inquir[y]. . . ." *Id.* ¶ 6. The Court proceeds to consider each factor in turn.

I.     PLAINTIFF'S REASONABLE INVESTMENT-BACKED EXPECATIONS

Plaintiffs properly characterize the issue under this factor as "whether Plaintiffs had a reasonable expectation that they would be able to use the parts of their properties affected by the 2013 [Gravel] Ordinance for the extraction of gravel. . . ." (Pl's Brief 6.) *See Me. Educ. Ass'n Benefits Trust v. Cioppa*, 695 F.3d 145, 154. The Court concludes that, given the regulated nature of Plaintiffs' business, and in particular the pre-existing setback requirement for gravel mines, Plaintiffs could not have reasonably expected that the setback requirement would remain static from year to year each time the Town amended its ordinances.

Plaintiffs concede that they work in a regulated industry. (Pl's Br. 6.) The reasonableness

5

of Plaintiffs' expectations regarding minable area is diminished proportionality by the extent to which their industry is regulated. *See id. See also Franklin Mem. Hosp. v. Harvey*, 575 F.3d 121, 128 (1st Cir. 2009). It is uncontested that the Town regulates gravel operations through a permitting scheme, that permits are conditioned on compliance with regulations that have historically included setback requirements, that permits must be reissued every three years, and that the Town may change its regulatory requirements from time to time. (J.S.M.F. ¶ 4-9.) (Pl's Br. 6.) Under these facts, Plaintiffs could not have reasonably expected that they would be able to extract gravel within the new setback margin throughout the life of the mine. If it is accepted that the Town has the authority to amend its regulations pertaining to Town gravel mines in other respects, then it is unreasonable to assume that the setback requirement would never be increased.

In apparent recognition of this fact, Plaintiffs argue that they could not have reasonably expected that the setback requirements would be increased to the extent they were in the 2013 Gravel Ordinance. But the Court finds that the increase in the setback requirement of the 2013 Gravel Ordinance is within a range that Plaintiffs should have reasonably expected.[3] Plaintiffs acknowledge that the Town has the authority to impose other regulations on their sand and gravel pits, and it is reasonable to assume that these regulations could impose additional costs on Plaintiffs' operations. In other words, even if the increased setback requirements have impacted Plaintiffs' investment-backed expectations, the impact is reasonable and does not go too far.

Plaintiffs are undoubtedly disappointed by the Town's decision to increase the setback requirement, but they cannot have reasonably expected to extract gravel up to the previously

---

[3] The Court notes that the evidence establishes that the extractable area of one of Goodwin's pits is reduced by 41.6%. Standing alone, this reduction may be sufficiently drastic as to not be reasonably expected. But Plaintiffs in this case do not ask the Court to make a case-by-case determination as to the applicability of the 2013 Gravel Ordinance to each of Plaintiffs' sand and gravel pits. Instead, Plaintiffs ask the Court to declare that the 2013 Gravel Ordinance is unconstitutional and "do[es] not apply to any properties owned by the Plaintiffs . . . ." (Compl. at 4.)

6

mandated margins indefinitely. To the extent that the increased setback requirements affect Plaintiffs' investment-backed expectations, the effect is not unreasonable. The Court thus finds that this factor does not support Plaintiffs' contention that the 2013 Gravel Ordinance results in a regulatory taking of Plaintiffs' property.

II.   THE ECONOMIC IMPACT ON PLAINTIFFS

This factor requires an assessment of the extent to which government action "'impairs the value or [typical] use' of the property." *Cioppa*, 695 F.3d at 157 (quoting *PruneYard Shopping Ctr. v. Robbins*, 447 U.S. 74, 83 (1980)) (alteration in original). A plaintiff bears the burden of proof, and must present "concrete evidence" of adverse economic impact. *Cioppa*, 695 F.3d at 157. Judicial determination of the adverse economic impact cannot rest on conjecture or speculation. *Id.* (citing *In re Jones Truck Lines, Inc.*, 57 F.3d 642, 651 (8th Cir. 1995); *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 456 (6th Cir. 2009)).

Plaintiffs claim that "[t]he economic impact of the 2013 Ordinance on Plaintiffs is severe." (Pl's Brief 7.) In support of this claim, Plaintiffs have presented the Court with evidence of the area of their existing mines that is affected by the 2013 Ordinance, the percent reduction of minable area resulting from the 2013 Ordinance, and how much each Plaintiff charged for different types of gravel. (J.S.M.F. ¶¶ 10-13; Exs. G, H, I, J.) While this evidence is all relevant to a determination of the economic impact of the 2013 Ordinance on Plaintiffs, it is inadequate. The Court would be required to speculate as to the extent of the economic impact.

First, although Plaintiffs charge for gravel by volume units, they have offered evidence of only the scope of the reduced surface area. (*Id.*) The Court would be required to make inferences about the depth of the affected area in order to determine the economic impact, and in the absence of any evidence of gravel depth, the inference would be entirely speculative. Second,

7

although Plaintiffs have put on evidence of what they each charge for different sizes of gravel, there is no evidence of how much of each size each Plaintiff could have expected to extract from the affected area. (*Id.*) Speculation would again be required for the Court to attempt to quantify the economic impact on Plaintiffs. Lastly, Plaintiffs have not alleged that there has been any deprivation to the value of their properties or put on any evidence to that effect. In sum, there is insufficient evidence for the Court to make a determination of whether or to what extent the 2013 Gravel Ordinance has had an adverse economic impact on Plaintiffs. *See Cioppa*, 695 F.3d at 157.

On the other hand, the evidence shows that Plaintiffs can still extract gravel from the great bulk of their property.[4] Even if the Court were to assume that a 10.2% decrease in mining area equates to a 10.2% reduction in economic value to the Plaintiffs' businesses or the value of their land—an assumption to the benefit of Plaintiffs[5]—this would still not support a finding of sufficient economic impact under this factor. *See AIU Ins. Co. v. Superintendent, Me. Bureau of Ins.*, No. CV-89-963, 1991 Me. Super. LEXIS 5, at *22-24 (Jan. 2, 1991); *Portland Sand & Gravel, Inc. v. Town of Gray*, No. CV-93-882, 1995 Me. Super. LEXIS 393, at *7-9 (Nov. 4, 1995). *Cf. MC Assocs. v. Town of Cape Elizabeth*, 2001 ME 89, ¶¶ 3-4, 773 A.2d 439. The Court concludes that this factor also weighs against finding a regulatory taking under these factual circumstances.

III.    THE CHARACTER OF THE GOVERNMENT ACTION

"Under *Penn Central*, '[a] "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference

---

[4] *See* p.6 n.3 of this Order, *supra*.

[5] The Court is under no obligation to make any assumptions to the benefit of Plaintiffs. Plaintiffs bear the burden of proof in this action. *M.C. Assocs.*, 2001 ME 39, ¶ 7, 773 A.2d 439. On the contrary, courts generally presume municipal ordinances are constitutional. *See Ferraiolo Constr. Co. v. Town of Woolwich*, 1998 ME 179, ¶ 9, 714 A.2d 814 (municipal ordinances "cloaked with a presumption of constitutionality").

8

arises from some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Franklin Mem. Hosp.*, 575 F.3d at 128-29 (quoting *Penn Central*, 438 U.S. at 124) (alteration in original). Plaintiffs describe this factor as a spectrum, with physical invasions on the one side and public programs which shift some economic burden from the public to a private actor on the other. (Pl's Brief 8.) A permanent physical invasion, however minor, is a categorical taking requiring compensation, rendering the rest of the *Penn Central* analysis unnecessary. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 434-35 (1982). *But cf. Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 332, 342 (2002) (temporary physical invasions subject to *Penn Central* approach). Plaintiffs concede that the government action in this case is not a physical invasion. (Pl's Brief 4 n. 5; p. 8.) However, they argue that the 2013 Gravel Ordinance is nonetheless closer to an actual physical invasion than a burden-shifting public program.

The Court agrees that the 2013 Ordinance is more like a physical invasion than a public program. The 2013 Ordinance prohibits Plaintiffs from extracting gravel from an area of their property from which they were formerly allowed to extract gravel. That the restriction inures to the land itself, and prohibits Plaintiffs from using the land in the way they intended—its only real commercial use—distinguishes this case from those where courts have found that the government action was closer to the public program end of the spectrum. *Cf. Cioppa*, 695 F.3d at 150, 157-58 (legislation requiring insurers to share basic loss information with school administrative units); *Harvey*, 575 F.3d at 128-29 (legislation requiring hospitals to provide free care to the poor). *See also AIU Ins. Co.*, 1991 Me. Super. LEXIS 5, at *1-3, *28-29 (legislation requiring insurers to charge lower rates for certain policies).

The Town does not address this factor in its brief. Courts in other jurisdictions have found

9

use restrictions on some portion of the land itself to be closer to a public program than a physical invasion when the government articulates how the regulation serves the common good and promotes the health safety or general welfare of the public. *Dist. Intown Props. Ltd. P'shp. v. District of Columbia*, 23 F. Supp. 2d 30, 37 (D.D.C. 1998). The Town explains that the 2013 Gravel Ordinance was intended "[t]o balance the public welfare against the ongoing mining activities of previously licensed property owners," but does not apply this fact to the third *Penn Central* factor. (Def's Br. 2.) But even if the Town is conceding that the government action in this case is more analogous to a physical invasion than a burden-shifting public program, the inadequacies of the other two factors discussed above weigh too heavily in favor of the Town for this one factor standing alone to render the 2013 Gravel Ordinance a taking under the Maine and U.S. Constitutions.

IV.    THE 2013 GRAVEL ORDINANCE IS NOT A TAKING REQUIRING COMPENSATION UNDER EITHER THE MAINE OR U.S. CONSTITUTIONS

Plaintiffs have failed to prove that the 2013 Gravel Ordinance is a taking requiring compensation under the Maine or U.S. Constitutions. If Plaintiffs expected to be able to extract gravel from the area described in the new setback requirements regardless of regulatory changes, that expectation was not reasonable. There is inadequate evidence of economic impact to the Plaintiffs, and the evidence presented tends to establish that the economic impact is insufficient to constitute a taking under the Maine or U.S. Constitutions. While the character of the 2013 Ordinance is closer to a physical invasion than a public program, this one factor standing alone is insufficient to render the 2013 Ordinance a taking. The Court thus declines to enter an order declaring that the setback provisions of the 2013 Gravel Ordinance do not apply to Plaintiffs' property, as requested in their Complaint.

**CONCLUSION**

10

Based on the foregoing it is hereby ORDERED:

That judgment be entered in favor of the Defendant Town of Lamoine.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Dated: February 13, 2018

Richard Mulhern
Judge, Business and Consumer Court

11

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-2017-05 ✓

HAROLD MACQUINN, INC., et. al.,    )
                                )
       Plaintiffs,           )
                                )
v.                            )     ORDER STAYING PROCEEDINGS
                                )     TO ALLOW ATTORNEY GENERAL
TOWN OF LAMOINE          )     AN OPPORTUNITY TO RESPOND
                                )
       Defendant.        )

This case was presented to the Court for decision without trial on a stipulated record and based on the written arguments of the parties. Plaintiffs Harold MacQuinn, Inc., Doug Gott and Sons, Inc., and John W. Goodwin, Jr., Inc., (collectively, "Plaintiffs") filed their brief on October 2, 2017, and Defendant Town of Lamoine ("Lamoine") filed its brief on November 13, 2017. Plaintiffs timely replied.

## PROCEDURAL POSTURE

Plaintiffs' Complaint for Declaratory Judgment (hereafter the "Complaint") was filed in Hancock County Superior Court on January 27, 2016. The case was transferred here to the Business and Consumer Court upon judicial recommendation and accepted by this Court on February 23, 2017. The first Case Management Conference was held in this Court on April 6, 2017. By that time, the case had been pending for over a year and discovery was substantially complete. The parties agreed to work toward compiling a joint statement of facts and stipulated record for the case to be decided without trial and on briefs to be filed by the parties. On August 8, 2017, the Court held a telephonic Status Conference. Edmond Bearor, Esq., attorney for Plaintiffs, was unable to participate, but Daniel Pileggi, Esq., attorney for Lamoine, informed the

1

Court that Ms. Bearor had asked him to convey the parties' agreement on deadlines, *viz*: the parties would have ten days to finalize the stipulated record; Plaintiffs brief would be due September 30, 2017; Defendants' brief would be due November 15, 2017; and Plaintiffs' reply brief would be due November 29, 2017. The parties' joint statement of material facts was filed electronically with this Court concurrently with Plaintiffs' brief on October 2, 2017.

## DISCUSSION

In addition to arguing against the merits of Plaintiffs' claim for declaratory relief, Lamoine raises two procedural concerns that this Court must address before the merits can be decided. First, Lamoine claims that Plaintiffs' brief and the final version of the joint statement of material facts were untimely filed. Second, Lamoine claims that Plaintiffs have failed to comply with 14 M.R.S.A. § 5963 of Maine's Declaratory Judgments Act. Lamoine argues that either of these purported lapses requires dismissal of the Complaint with prejudice.

## I.    PLAINTIFFS' SUBMISSIONS WERE TIMELY

At the August 8 Status Conference, Mr. Pileggi conveyed to the Court that the parties had reached an agreement on scheduling and that Plaintiffs' brief would be due on September 30, 2017. The Court adopted this deadline in its order on the conference record entered August 8, 2017. Plaintiffs brief was filed with this Court on October 2, 2017. Lamoine claims that this renders Plaintiffs' filing untimely and argues that this procedural lapse requires dismissal with prejudice.

Under M.R. Civ. P. 6(a), "[t]he last day of the period so computed [by order of the court] is to be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a holiday." As Plaintiffs point out, September 30, 2017 was a Saturday. Monday, October 2, 2017 was the next day which was not a Saturday, a Sunday, or a holiday. Plaintiffs' submission was therefore timely under Rule

2

6, and contrary to Lamoine's assertions, Plaintiffs therefore were not required to request an enlargement of time from this Court. *See* M.R. Civ. P. 6(b).

## II. THE ATTORNEY GENERAL MUST BE AFFORDED AN OPPORTUNITY TO RESPOND

Plaintiffs' Complaint seeks relief pursuant to Maine's Uniform Declaratory Judgments Act, 14 M.R.S.A. § 5951-5963. "To obtain relief pursuant to the Uniform Declaratory Judgments Act, a party must comply with the statute. In a declaratory judgment action involving the validity of a municipal ordinance, the plaintiff is required to serve a copy of the proceedings on the Attorney General." *Ferraiolo Constr. Co. v. Town of Woolwich*, 1998 ME 179, ¶ 8, 714 A.2d 814 (citations omitted). *See also* 14 M.R.S.A. § 5963 ("When declaratory relief is sought . . . [i]n any proceeding which involves the validity of a municipal ordinance . . . if the [ordinance] . . . is alleged to be unconstitutional, the Attorney General shall be served with a copy of the proceeding and be entitled to be heard.").

Plaintiffs first argue that they were not required to serve a copy of the Complaint on the Attorney General because the Complaint challenges the constitutionality of a municipal ordinance, not a State statute. Regardless of the grammatical merits of this argument, our Law Court has held that 14 M.R.S.A. § 5963 requires the Attorney General be served when the constitutionality of a municipal ordinance is challenged. *McNicholas v. York Beach Vill. Corp.*, 394 A.2d 264, 268 (Me. 1978); *Ferraiolo Constr. Co.*, 1998 ME 179, ¶ 8, 714 A.2d 814.

Next, Plaintiffs argue that they were not required to notify the Attorney General because Plaintiffs do not allege the ordinance is unconstitutional "on its face," but rather "as applied" to them. The Court does not find this argument persuasive. The language of the statute does not restrict the service requirement to "facial" constitutional challenges. Rather, by its terms, it applies whenever a statute or ordinance is alleged to be unconstitutional.

3

This Court thus rules that Plaintiffs are required to notify the Attorney General of these proceedings in order to obtain relief under Maine's Uniform Declaratory Judgment Act. In their reply brief, Plaintiffs informed the Court that notwithstanding their position that service on the Attorney General was not required, out of an abundance of caution they nonetheless served a copy of the Complaint on the Attorney General concurrently with their filing of that brief on November 29, 2017. With this in mind, the Court must determine the proper procedure to follow to cure this procedural default.

In *Ferraiolo Constr. Co.*, the Law Court held that the trial court "should have dismissed Ferraiolo's claim for declaratory judgment[]" because it challenged the constitutionality of a municipal ordinance in its suit and Ferraiolo had failed to serve a copy of the proceedings on the Attorney General. *Ferraiolo Constr. Co.*, 1998 ME 179, ¶ 8, 714 A.2d 814. The Law Court reasoned that dismissal was required because otherwise the Attorney General's opportunity to intervene, which the Legislature "undoubtedly intended," would be "forclose[d]." *Id.* The trial court had decided the issue of service on the Attorney General was moot because that court had determined the ordinance in question was constitutional. *Id.* The Law Court noted that this reasoning "overlook[ed] the possibility of appeal." *Id.* Nonetheless, the Law Court did not find this failure to dismiss at the trial level a "barrier to appellate review" because "in the interest of judicial economy," the better solution was to "require Ferraiolo to notify the Attorney General of the pendency of the appeal." *Id.* The Attorney General was notified but declined to file a brief or otherwise participate in the appeal, and the Law Court proceeded to reach the merits of Ferraiolo's appeal. *Id. See also McNicholas*, 394 A.2d at 268 (reaching merits of constitutional challenge to municipal ordinance despite plaintiffs' failure to serve the Attorney General); *Currier Builders, Inc. v. Town of York*, Docket No. 01-68-P-C, 2001 U.S. Dist. LEXIS 10268, at *6-7 (D. Me. July

4

20, 2001) (declining to dismiss case where plaintiffs initially failed to serve a copy of their complaint on the Attorney General but belatedly complied).

Plaintiffs here have already served a copy of the Complaint on the Attorney General. The Court thus rules that dismissal is neither required nor appropriate. Like our Law Court in *Ferraiolo Constr. Co.*, this Court instead rules that in the interest of judicial economy, recognizing the long pendency of this case, that discovery is complete and that the case fully briefed, the best use of our scarce judicial resources would be to stay this matter to provide Plaintiffs with an opportunity to ascertain whether the Attorney General wishes to participate in the case. Staying the case allows the Attorney General an opportunity to participate in this case here or on appeal, thereby ensuring that the legislative intent of the service requirement of 14 M.R.S.A. § 5963 is realized.

The Court thus **orders** that this matter be stayed for thirty days to allow Plaintiffs an opportunity to attempt to ascertain whether the Attorney General wishes to participate in this case. Plaintiffs are **ordered** within thirty days to inform the Court of whether they have been able to ascertain whether the Attorney General will be filing a brief or otherwise participating in the case. If the Attorney General declines to participate, the Court will consider Plaintiffs in compliance with the service requirement of 14 M.R.S.A. § 5963 and proceed to decide this case on the merits. If the Attorney General indicates that she will be participating in the case, a Scheduling Conference will be scheduled to determine deadlines and procedure moving forward.

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED

That this matter be stayed for 30 days to allow Plaintiffs an opportunity to attempt to ascertain whether the Attorney General wishes to participate in the case.

5

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: December 7, 2017

Richard Mulhern
Judge, Business and Consumer Court

6