**Walter A. HYLER**

v.

**TOWN OF BLUE HILL.**

Supreme Judicial Court of Maine.

Argued Oct. 31, 1989.
Decided Feb. 22, 1990.

Peter R. Roy (orally), Roy & Kesaris, Ellsworth, Robert Mittel, Mittel & Hefferan, Portland, for plaintiff.

Paul W. Chaiken (orally), Edmond J. Bearor, Rudman & Winchell, Bangor, Edwin R. Schneider, Blue Hill, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

HORNBY, Justice.

In this case we interpret the statutory requirement that a planning board "issue an order" in approving or disapproving a

subdivision proposal. We conclude that the statute requires more than a simple vote approving or disapproving the proposal.

Walter and Elaine Hyler purchased a 28.-29 acre parcel of land on the westerly flank of Blue Hill in the Town of Blue Hill on December 31, 1986. In March of 1987 they sought approval from the Town Planning Board to subdivide the parcel. After several meetings the Board voted on June 4, 1987 to reject the application. On June 12, it issued a written order to that effect. That very day, apparently relying on the exception for gifts to family members, 30 M.R.S.A. § 4956(1) (Supp.1987), the Hylers executed—without Planning Board approval—a number of deeds that divided their property into seven parcels: two parcels each to Walter and Elaine; and one each to their son, daughter and a closely held corporation the Hylers controlled. The same day, Walter Hyler filed an application to subdivide one of his two parcels. On July 23, 1987, the Board voted to approve the subdivision of this parcel. It issued a written order to that effect on August 19, 1987.

On October 2, 1987, Walter Hyler requested subdivision approval for his other parcel. On October 28, the Board voted to approve the project and, according to the minutes, "agrees to sign the approval at the next meeting," an apparent reference to the customary issuance of a separate order. The order, however, never issued. Immediately after the October 28 vote of approval, Walter submitted on behalf of Elaine an application to subdivide one of her parcels. At its next meeting, November 11, 1987, the Board discussed not only Elaine's application but also the issue whether the Hylers' activities demonstrated a pattern of development designed to evade the subdivision ordinance and Department of Environmental Protection review. At that meeting the Board declined to give final approval to Walter's second subdivision and voted to hold a hearing "on the question whether the family division of the Hyler property is an illegal subdivision because of an intent to avoid the objectives of the subdivision law."

On December 2, 1987, the Board held the hearing: the Hylers chose not to attend. The Board concluded that the Hylers' development activities were an illegal attempt to avoid the subdivision ordinance and voted to reconsider its approval of Walter Hyler's second application. On December 16, 1987, the Board issued its "Findings of Fact, Conclusions of Law and Decision" to that effect. With respect to Walter's second application it made the factual findings that (1) "[t]he Planning Board voted to approve this application on October 28, 1987, but did not issue an order approving the subdivision on that occasion, nor did it sign the required survey indicating approval," and (2) that on November 11, 1987, it had decided "that it should defer final approval of the Walter Hyler Four Townhouse Subdivision and hold a hearing concerning the legality of the June 12 family division of the Hyler property." It made factual findings on the Hyler family conveyances, and concluded that they were not exempt from the subdivision law because they were not gifts but were designed to avoid the objectives of the subdivision law. The order ended by stating: "the application by Walter Hyler for division of his 2.65–acre lot into a four-unit townhouse is denied."

Walter Hyler appealed both the denial of his second subdivision application and the Board's decision that the earlier division among family members was illegal, arguing that the Board could not reexamine the legality of the family transfers after having approved the first subdivision and was barred by its October 28 vote to approve the second application. The Superior Court (Hancock County, *McKinley, J.*) ruled that the Board could reexamine the question of illegality, but reversed the denial of the second application and remanded to the Board with instructions to sign the subdivision plan approved on October 28, 1987, reasoning that the October 28 vote was a final decision that could be reconsidered only during the 30–day appeal period following the vote. We agree that the Board could reexamine the question of illegality but we vacate the rest of the decision.

The Maine subdivision statute provides that a local planning board that decides to deny or grant approval of a proposed subdivision must "issue an order" to that effect. 30 M.R.S.A. § 4956(2)(D) (Supp.1987). In *Vachon v. Town of Kennebunk*, 499 A.2d 140 (Me.1985), we dealt with language (governing zoning boards of appeal) that required a "decision" to be "rendered." We concluded that "the decision is rendered" "when the zoning board of appeals publicly makes its decision or announces it to the public," in other words, when it votes at a public meeting. *Id.* at 142. To "issue an order," however, suggests a step beyond merely rendering a decision. *See Torrey v. Full Gospel Church of Searsport*, 394 A.2d 276, 278–79 (Me.1978) (court's notation that a motion is granted does not amount to an order). That of course is how the Blue Hill Planning Board has consistently interpreted the statute in dealing with the Hyler applications. We are not called upon today to decide whether a planning board can issue an unwritten order by simply having its minutes reflect the issuance of such an order in the same fashion as a court might issue an order at a hearing. Nothing at the October 28 meeting even resembles an order. Instead, the Planning Board clearly demonstrated in its October 28 vote that it planned to issue a separate written order as it had in the past. We are content, therefore, that the Planning Board never made a final decision approving the Hyler subdivision application until it issued its written order denying approval on December 16, 1987.[1] Its October 28 action did not preclude this final resolution.[2]

Like the Superior Court, we reject Hyler's argument that in reviewing new subdivision applications the Planning Board could not reconsider the validity of the original Hyler family transfer in light of the Hylers' subsequent conduct. The Planning Board is not attempting to reopen its final approval of the first application, but reviewing the qualification of each new subdivision application as it comes before it. As the Superior Court reasoned:

> Plaintiff argues that because the Board, on July 16, 1987, in approving the first subdivision, concluded that it was a "legal subdivision," no further inquiry can be made into the applicability of the gift to family members exception to the requirements of Title 30 M.R.S.A. § 4956. If that is so, the Hylers are free to do a considerable amount of additional subdividing regardless of their intent. I reject that view. While it is true that the Board either expressly or implicitly concluded that on July 16th and again on October 28th when it voted to approve the townhouse proposal that 30 M.R.S.A. § 4956 was not being violated, the Board is free to reexamine that issue as each succeeding proposal comes in on the evidence available to it. Likewise, on each proposal the Board is free to reexamine the issue as to whether the title transfers of June 12, 1987 constituted gifts within the meaning of 30 M.R.S.A. § 4956 or whether the transfer, at least between Walter and Elaine, was merely a division between joint owners designed and intended to avoid the requirements of the subdivision statute.

The entry is:

Judgment vacated and remanded to the Superior Court with instructions to enter an order denying the plaintiff's request for relief.

McKUSICK, C.J., and CLIFFORD and COLLINS, JJ., concur.

---

1. 30 M.R.S.A. § 4956(2)(D) (Supp.1987) does require that the Planning Board act within 30 days of a public hearing or within 60 days of determining that it has received a complete application. The remedy for a tardy decision is M.R.Civ.P. 80B(b), permitting a plaintiff to challenge a failure to act within six months after expiration of the time in which the action should have occurred.

2. In light of our decision that the October 28, 1987, vote was not a final decision we do not address whether the Planning Board could reconsider such a final decision in the manner and at the time it did so.

ROBERTS, Justice, with whom WATHEN and GLASSMAN, JJ. join, dissenting.

Because I agree with the Superior Court that the December 16 vote was ineffective to change the Board's October 28 approval of the proposed subdivision, I must respectfully dissent.

The Town argues that the October 28 vote did not become binding because 30 M.R.S.A. § 4956(3) requires the Board to "issue an order" and that implicitly requires a written order. Because the Board's December 16 vote occurred before its approval had been reduced to writing, the Town argues, nothing prevented the Board from reconsidering its approval. Moreover, the Town contends that the Board's action on November 11 would effectively extend the time for reconsideration. I disagree.

There is no reason to infer from the plain language of the statute that the action of the Board is ineffective unless and until it is reduced to writing. This is particularly true when, as here, an earlier version of the statute explicitly required a "written notice of [the Board's] decision." 30 M.R.S.A. § 4956(1)(E) (1964); repealed by P.L. 1971, ch. 454. Both the proponents and the opponents of a subdivision proposal are entitled to know with certainty when the time for seeking judicial review commences to run. To rely on the reduction of the minutes to writing or the signing of the mylar copy of the plan by Board members would create uncertainty when certainty is necessary. Cf. *Vachon v. Town of Kennebunk*, 499 A.2d 140 (Me.1985) (interpreting 30 M.R.S.A. § 2411(3)(F) that provides for judicial review "within thirty days after the decision is rendered").

In the absence of any statute permitting reconsideration, the Board could rescind its approval, if at all, only by a proper vote taken within the period permitted for seeking judicial review. We have previously held that a vote *not to reconsider* does not extend that period. *Cardinali v. Town of Berwick*, 550 A.2d 921 (Me.1988). There is no reason why a vote *to reconsider* should have any different impact. The time periods provided in section 4956 are intended to ensure prompt municipal action, but they do not affect the time for seeking judicial review. That period is determined by M.R. Civ.P. 80B(b), which requires the complaint to be filed within 30 days after "notice of any action ... of which review is sought...." The Town or the Hylers could seek judicial review only within the 30 day period commencing on October 28.

I am not persuaded by the Town's alternative argument that the Board's vote on November 11 amounted to rescinding the October 28 vote. All the Board did on the 11th was to announce a public hearing on the question of the legality of the division in June of the Hylers' real estate. The formal vote to rescind its October 28 approval was taken on December 16. Even if a decision to reconsider could extend the 30 day period, the Board's action would not be valid because the only affirmative vote "to reconsider" occurred on December 2. The Board's action on December 16 was ineffective to rescind its approval of October 28 because the action was not taken within the period permitted for seeking judicial review.

Today's decision ignores legislative history and undermines legislative purpose. The Legislature has demonstrated with each revision of the subdivision statute over the past 25 years that municipal boards are not permitted to delay action on completed applications for subdivision approval. The Court's decision permits the Board to reconsider a formal vote of approval beyond the time period within which the statute requires final action. The plain language of section 4956 required the Board to act finally on or before November 28, 1987. I would not permit the Board's local custom of issuing written orders to create a separate procedure that frustrates the statutory scheme.