STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                                      CIVIL ACTION
                                                                    DOCKET NO. CV-02-362

SOLD, INC., DESIGN DWELLINGS, INC.,
GILBERT HOMES, INC.,
BUSQUE & DUCHAINE ASSOCS.,
SUSAN DUCHAINE, THOMAS SHAW, &
JAMES SHAW
              Plaintiffs

                                              ORDER ON PLAINTIFFS' MOTION
                                              FOR SUMMARY JUDGMENT
          v.

                                              DONALD L.        RECHT
                                                 LAW LIBRARY
TOWN OF GORHAM,
              Defendant.
                                                   SEP 30 2003

Plaintiffs' Motion for Summary Judgment is before the court. The parties filed a

Stipulation of Facts, but the parties have also filed a Statement of Material Facts (SMF)

and opposition and reply thereto.[1]

## FACTUAL BACKGROUND

The following facts are based solely on the Stipulation of Facts submitted by the

parties. Plaintiffs are real estate developers, or principals of companies conducting real

estate development in the Town of Gorham. On January 5, 1999, the Gorham Town

Council amended the Gorham Land Use and Development Code (Code) to include the

requirement in Chapter III(C)(4), the Recreational Space Ordinance (Ordinance), that

developers either (a) reserve a percentage of land within the subdivision for "active

recreational use" or (b) pay to the Town of Gorham a fee to be used by the Town for

the construction of new recreational area or the expansion of existing recreation areas.

---

[1] Because Defendant's Opposition to Plaintiffs' SMF was not timely pursuant to M.R. Civ. P. 7(c), 56(c), Plaintiffs initially contended that all of their SMF were deemed admitted and any objections to their arguments were waived. See M.R. Civ. P. 7(c)(3), 56(h)(4). However, the parties then agreed to submit stipulated facts by May 21, 2003, which were filed on May 22, 2003. Following the filing of the Stipulation, Defendant filed its Opposition to Plaintiffs' SMF and Plaintiffs filed their Reply to Defendant's Opposition to Plaintiffs' SMF. Both parties stated in telephone conversations that the

In February of 1999, the Town Council set a $500 per lot or per unit fee; this fee has remained unchanged since then.

As of May 2002, the Town has collected $132,000 in recreational fees and is owed an additional $30,000.[2] The Town has not expended any of the fees collected. None of the Plaintiffs appealed the assessment of the $500/lot impact fee at the time of its assessment. In 1999, all of the Plaintiffs, except Gilbert Homes, Inc. and Busque & Duchaine Assocs., were Plaintiffs in a lawsuit regarding problems with Town officials' interpretation of Town Ordinances and their application of Town processes in relation to Plaintiffs' respective development projects.

Plaintiffs filed a two-Count Complaint. In Count I Plaintiffs seek a declaration that the Ordinance violates 30-A M.R.S.A. § 4354 because it fails to comply with the requirements in § 4354. In Count II, Plaintiffs seek a declaration that the Ordinance is either illegal because was enacted outside of the home rule authority granted to municipalities under § 4354 to impose impact fees or that it is unconstitutional. With respect to both Counts, Plaintiffs seek reimbursement of all fees paid pursuant to the Ordinance together with interest and costs.

## DISCUSSION

### Procedural Challenges

Defendant raises three procedural arguments. The procedural challenges will be addressed prior to the determining the substantive issues at summary judgment.

1. Untimely 80B Appeal

Defendant contends that Plaintiffs' arguments against the Ordinance should have been raised before the Planning Board (Board) when their respective subdivisions were

---

stipulated facts represent only the core facts and the court must sift through the other SMF to determine whether there are any disputed facts.

[2] The breakdown for the individual Plaintiffs is as follows: Sold, Inc. $39,000; Design Dwellings, Inc. $18,000; Gilbert Homes, Inc. $16,000; Busque & Duchaine Assocs. $9500 (Susan Duchaine Partner); Susan

approved subject to the $500/lot fee. Plaintiffs assert that such an appeal was not proper because the Board's inclusion of this specific Ordinance requirement was merely a ministerial act and not an "appealable action." There is significant support for the Defendant 's contention that when a direct appeal from an administrative decision lies, it is exclusive. Fisher v. Dame, 433 A.2d 366, 372-74 (Me. 1981) (concluding that a direct appeal was available and was adequate); Colby v. York Cty. Comm'rs, 442 A.2d 544, 547 (Me. 1982) (holding an ordinance that allows for direct appeal is intended as an exclusive remedy). The Town's Code includes such a provision permitting appeals to the Superior Court of any decision by the Planning Board regarding subdivisions. Code, ch. III, § I(H) at 161.

The Law Court recognizes three exceptions to the exclusivity of direct appeal: 1) where direct appeal is not broad enough in scope to allow for judicial review of all of the issues a plaintiff seeks to have considered; 2) where the claim is that the ordinance under which the administrative agency acted was unconstitutional; and 3) where the case involves a "complex course of executive and legislative conduct by municipal officers as to which a [local] remedy is impossible." Fisher v. Dame, 433 A.2d at 374.

Only the first two of the three exceptions need be addressed in relation to the present facts. First, a direct appeal would not normally encompass legal challenges to the ordinance itself. If Plaintiffs had raised the issue of legality before the Board, the Board would not have had jurisdiction to hear the argument, and a review by the Superior Court would have been limited to the record and findings of the administrative body below. See F. S. Plummer Co. v. Town of Cape Elizabeth, 612 A.2d 856, 859 (Me. 1992) (stating that 80B appeals only lie from conduct by Town serving an administrative or quasi-judicial function, not from legislative decisions); but see Hyler v.

---

Duchaine $1000; and Thomas & James Shaw $7000. The total amount collected from Plaintiffs is $90,500.

Town of Blue Hill, 570 A.2d 316, 317 (Me. 1990) (holding that the Planning Board could examine whether certain development activities were illegal attempts to create a subdivision). However, the Plaintiffs, in an 80B Appeal, could have moved pursuant to Rule 80B(d) for a trial of the facts and expanded the record, M. R. Civ. P. 80B(d), or they could have joined an appeal with an independent action alleging the legal claims. M. R. Civ. P. 80B(i). Thus, the first exception to the exclusivity of the 80B appeal is unavailing under the present facts.

The second exception more aptly applies to the present case. If the claim is that an ordinance is unconstitutional, then the contention is also that the Board acted beyond its lawful authority. Fisher v. Dame, 433 A.2d at 374 (stating "where a claim is made that the ordinance under which the administrative agency purported to act was unconstitutional on its face," a departure from the exclusivity of appeal is warranted). In the instant case, Plaintiffs allege violations of the United States and Maine Constitutions. Therefore, Plaintiffs' claim is not barred for failure to timely appeal an administrative appeal pursuant to Rule 80B.

2. Failure to Exhaust Administrative Remedies

Defendant puts forward another related argument, contending that the Plaintiffs have failed to exhaust the administrative remedies available to them because they did not apply for a waiver, as provided for in the Code. Code, ch. III, § I(F). First, the aforementioned constitutional attack on the Ordinance similarly exempts Plaintiffs' claim from the administrative exhaustion requirement. Furthermore, the "administrative remedy" suggested by Defendant is completely inadequate and inappropriate to remedy the injury alleged. The waiver, which the Town asserts was available to the Plaintiffs, would require the Plaintiffs to demonstrate that the Ordinance causes undue hardship, is not in the best interest of the Town, or that Plaintiffs'

respective developments were not going to impact the Town, so as to require adherence to the Ordinance. Id.

The waiver is not an "appeal." The waiver is entitled a "variation." Id. Therefore, applying for a waiver is not required in order to have exhausted administrative remedies. Moreover, if a waiver had been requested, the Plaintiffs' ground for the waiver, unconstitutionality, would not have permitted granting the waiver. Finally, the waiver process would have accomplished nothing with respect to Plaintiffs' primary contention that the Ordinance is unconstitutional or otherwise illegal. Town of Freeport v. Greenlaw, 602 A.2d 1156, 1160 (Me. 1992) (stating "*failure to appeal* from an adverse decision of a municipal code enforcement officer can constitute a failure to exhaust administrative remedies" (emphasis added)).

### 3. *Res Judicata* Effect of Prior Litigation

Gorham next argues that the Plaintiffs' complaint is barred by the doctrine of *res judicata*, the principles and application of which are well settled in Maine.[3] See, e.g., DuMont v. Fleet Bank of Maine, 2000 ME 197, 760 A.2d 1049; Machias Sav. Bank v. Ramsdell, 1997 ME 20, ¶ 11, 689 A.2d 595, 599; Johnson v. Samson Constr. Co, 1997 ME 220, 704 A.2d 866; Connecticut Nat'l Bank v. Kendall, 617 A.2d 544, 547 (Me. 1992); Beegan, 451 A.2d at 643-44 . *Res judicata* is "a court-made collection of rules designed to ensure that the same matter will not be litigated more than once." Machias Sav. Bank, 1997 ME 20, ¶ 11, 689 A.2d at 599 (citing Beegan, 451 A.2d at 644). The doctrine of *res judicata* requires a plaintiff to plead all theories of recovery then available to him; he "cannot splinter his claim and litigate it separately in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim when he had

---

[3] *Res judicata* is distinguishable from the related doctrine of collateral estoppel, sometimes referred to as "issue preclusion," "which merely prevents the reopening in a second action of an issue of fact actually litigated and decided in an earlier case." Beegan v. Schmidt, 451 A.2d 642, 644 (Me. 1982) *Res judicata*, also referred to as "claim preclusion" "prohibits re-litigation of an entire cause of action...." Id. The Town has not raised the theory of claim preclusion.

reasonable opportunity to raise and litigate the same grounds in the former action." Barter v. Boothbay/Boothbay Harbor Community School Dist., 564 A.2d 766, 768 (Me. 1989) (citations omitted). *Res judicata* functions to bar a plaintiff from re-litigation of a claim "if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." Machias Sav. Bank, 1997 ME 20, ¶11, 689 A.2d at 599 (citing Dep't of Human Serv. ex rel. Boulanger v. Comeau, 633 A.2d 46, 48 (Me. 1995).

Gorham contends that the Plaintiffs' Complaint should be dismissed because all of the Plaintiffs, except Gilbert Homes, Inc., were parties to, or were "in privity" with, the plaintiffs in Duchaine, et al. v. Town of Gorham, CV-99-573 (Me. Super. Ct., Cum. Cty., June 15, 2001) (Crowley, J.) *available at* 2001 Me. Super. LEXIS 89 (the 1999 action). Although Busque & Duchaine Assocs. was not a named plaintiff in the 1999 action, Susan Duchaine is a "decision-making partner of Busque & Duchaine [Assocs]."

"Privity" exists where two parties so identify in interest "'that they represent one single, legal right.'" Tungate v. Gardner, 2002 ME 85, ¶9, 797 A.2d 738, 741 (quoting Comeau, 663 A.2d at 48. The First Circuit has held that under certain situations if a party to the second action was not named as a litigant in the prior suit, the first prong of the *res judicata* test may still be satisfied. Gonzalez v. Banco Central Corp., 27 F.3d 751, 758 (1st Cir. 1994). Such circumstances arise where "a nonparty either substantially controlled a party's involvement in the initial litigation, or, conversely, permitted a party to the initial litigation to function as its *de facto* representative." Id. In the instant case, the parties have stipulated, "Susan Duchaine is a decision-making partner of

Busque & Duchaine [Assocs.]."[4]  Therefore, Busque & Duchaine Assocs. is in privity

with Duchaine and the first prong of the *res judicata* analysis is satisfied as to all Plaintiffs

except Gilbert Homes.

There is no dispute as to the finality of the judgment in the 1999 action; the parties

do dispute whether the present matter was, or could have been, litigated in the 1999

action.   Whether matters could have been litigated depends on whether the same

"cause of action" was before the court in 1999. Currier v. Cyr, 570 A.2d 1205, 1208 (Me.

1990) (citing Beegan, 451 A.2d at 645).  "Maine has accepted what is known as a

'transactional test' of a cause of action." Id.  (quoting Gurski v. Culpovich 540 A.2d 764,

766 (Me. 1988)).

> [T]he measure of a cause of action is the aggregate of connected operative
> facts that can be handled together conveniently for purposes of trial. A
> prior judgment bars a later suit arising out [of] the same aggregate of
> operative facts even though the second suit relies on a legal theory not
> advanced in the first case, seeks different relief than that sought in the first
> case, and involves evidence different from the evidence relevant to the
> first case

DuMont, 2000 ME 197, ¶ 6, 760 A.2d at 1052.[5]  "'The effect of the prior decision upon the

present action is a question of law.'" Id. (quoting Currier, 570 A.2d at 1207-08).

Numerous factors weigh in favor of applying the doctrine of *res judicata*.  The 1999

action was commenced in October of 1999 and a First Amended Complaint was filed on

January 12, 2000.  The challenged Ordinance was adopted in February 1999. Per the

Stipulation of Facts, both Busque & Duchaine Assocs. and Gilbert Homes were assessed

---

[4] There are also assertions that the development complained about by Duchaine in the first action was
one of Busque & Duchaine Associates' developments. However, that assertion is not in the Stipulation
of Facts.
[5] The "transactional test" is also referred to as the "pragmatic concept" of cause of action. Beegan, 451
A.2d at 645.
> What factual grouping constitutes a "transaction," and what groupings constitute a "series," are
> to be determined pragmatically, giving weight to such considerations as whether the facts are
> related in time, space, origin, or motivation, whether they form a convenient trial unit, and
> whether their treatment as a unit conforms to the parties' expectations or business
> understanding or usage.

Id. (quoting *Restatement (Second) of Judgments* § 24 (1982)).

the $500/lot fee prior to the filing of the First Amended Complaint. Stip. ¶¶ 17, 21. The 1999 plaintiffs *could* have raised the issue of its constitutionality in that action. Currier, 570 A.2d at 1208 (stating that when a legal right to relief exists a plaintiff must assert it with all other rights)[6]; Kradoska v. Kipp, 397 A.2d 562, 568 (Me. 1979) (holding if plaintiffs was aware of fraud at the time of the first action, then she could have and should have raised the claim); Barter, 564 A.2d at 768 (holding that plaintiff was entitled to only one opportunity for relief, notwithstanding a new and distinct legal theory). Two of the more far-reaching cases, Kradoska and Currier, both found *res judicata* to bar a subsequent suit, notwithstanding a different legal theory, different relief sought, and new evidence. Kradoska v. Kipp, 397 A.2d 562; Currier, 570 A.2d 1205.[7]

The arguments against barring the present suit are less numerous and are not persuasive. The overriding principles supporting the imposition of the doctrine of *res judicata* are "concerns for judicial economy and efficiency, the stability of final judgments, and fairness to litigants." Beegan, 451 A.2d at 646. In the present case, judicial economy is not completely served because one of the Plaintiffs will not be barred. "[*Res judicata*] has been applied chiefly in the interests of judicial economy to bar re-litigation of a cause of action that has already been resolved by a valid prior

---

[6] The Currier court reasoned:
> [P]arties to the present suit may not escape the bar of res judicata by arguing that the court in [the first action] confined itself to delineating the parameters of the 20-foot public way, but failed to establish the width, location, or ownership of the entire strip of land between what are now the Curriers' two parcels. The doctrine of res judicata demands that a plaintiff seeking legal relief plead all theories of recovery then available to him. A plaintiff "cannot splinter his claim and litigate it separately in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim when he had a reasonable opportunity to raise and litigate the same grounds in the former suit." If the predecessors to the Cyrs or the Town had other rights to the strip of land between the parcels presently owned by the Curriers beyond the Town's 20-foot right of way, both the predecessors to the Cyrs and the Town should have asserted those rights in the [first] action. Their failure to do so does not prevent the prior judgment from acting as a legitimate bar to the present action.

Currier v. Cyr, 570 A.2d at 1209.

[7] The only actual overlap between the 1999 action and the present action is found in ¶ 12 of the 1999 Complaint, which includes allegations that Town officials advised the Planning Board to impose requirements that were "unauthorized by law" and to carry them out in an unconstitutionally discriminatory manner. Stip. Ex. 1 ¶ 12(k),(l).

8

judgment; the scope of the bar extends to all issues tried or that might have been tried in the prior action." Kradoska v. Kipp, Me., 397 A.2d at 565 (*quoted in* Beegan, 451 A.2d at 644) (internal citation omitted).

Second, although the issue of the legality/constitutionality of the Ordinance could have been raised in the 1999 action, the plaintiffs in the 1999 action sought relief from the actions of certain Town officials in applying and interpreting the ordinance to the development. The 1999 action contested the practices of individuals acting in their official capacity, not the *Town's decision* to adopt and administer the alleged impact fee. The wrong alleged is a different act – the adoption or administration of an illegal/ unconstitutional ordinance. Cf. Beegan, 451 A.2d at 647-48 (patient sued for same tortious act under warranty theory); Barter, 564 A.2d at 768 (student sued for same failure to graduate under new theory). Because the 1999 action alleged tortious acts, allegedly violating constitutional rights, not the existence and enforcement of an Ordinance, the two "causes of action" are somewhat distinct.

Despite these arguments, this court finds that Defendant has presented sufficient undisputed (stipulated) facts to support the application of *res judicata*. Under the present undisputed facts, the instant cause of action alleges the illegality/unconstitutionality of an ordinance that was in existence at the time of the 1999 action, seeks relief for damages that were, in part, cognizable when the 1999 action was filed, and is based on a legal theory available in 1999 (unconstitutionality and violation of 30-A M.R.S.A. § 4354 (1996 & Supp. 1999)). For these reasons all Plaintiffs except Gilbert Homes should be barred by *res judicata* from litigating the present action.

## Summary Judgment

Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact

and that any party is entitled to judgment as a matter of law. See Mueller v. Penobscot Valley Hosp., 538 A.2d 294, 299 (Me. 1988) (holding that granting summary judgment to either the moving or the non-moving party is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law"); see also M. R. Civ. P. 56(c). "A fact is material if it has the potential to affect the outcome of the case under governing law." Levine v. R.B.K. Caly Corp., 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing Burdzel v. Sobus, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). For the following reasons, summary judgment should be granted in favor of Plaintiff Gilbert Homes on Count I and against all other Plaintiffs on Count I, denied to all Plaintiffs on Count II, and granted in favor of Defendant on Count II.

1. Applicability of 30-A M.R.S.A. § 4354

In Count I of their Second Amended Complaint, Plaintiffs assert that the Ordinance is void because it is governed by § 4354 and has failed to comply with the requirements in § 4354(2) for impact fee ordinances. In response, Defendant relies on the introductory language of § 4354, which reads, in pertinent part:

> § 4354. Impact fees
> A municipality may enact an ordinance under its home rule authority requiring the construction of off-site capital improvements or the payment of impact fees instead of the construction.

30-A § 4354 (2003). Defendant argues that under § 4354, impact fees are fees that are paid only when *off-site* capital improvements are not made. It claims that the Ordinance in the present case requires that developers either dedicate land *on-site* or pay a fee in lieu of that dedication. Defendant concludes that the fees charged by the town are conditions required of the subdivision for development and not impact fees under

§ 4354 and, therefore, the requirements of § 4354(2) for impact fee ordinances do not apply. Read in isolation, Defendant's argument is appealing.

However, Defendant has failed to place § 4354 in its proper context. In construing a statute, the court takes into consideration "the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." State v. Burby, 2003 Me 95, ¶ 4, 828 A.2d 796 (citing State v. White, 2001 ME 65, P4, 769 A.2d 827, 828-29). Here, a reading of § 4354 must be coupled with a reading of the definition of impact fees provided in § 4301(6-A).

> 'Impact fee' means a charge or assessment imposed by a municipality against a new development to fund or recoup the cost of new, expanded or replacement infrastructure facilities necessitated by and attributed to the new development.

30 M.R.S.A. § 4301(6-A) (2003).

Under § 4301(6-A), the fees charged to Plaintiffs are impact fees because they are imposed by Gorham against new developments to fund the cost of new, expanded or replacement recreational space within Gorham that is necessitated by and attributed to the new development. See 30 M.R.S.A. § 4301(6-A) (2003). Here, Defendant had home rule authority to enact an ordinance requiring the construction of off-site capital improvements or the payment of impact fees in lieu of that off-site construction. See 30-A § 4354 (2003). Rather than offering individuals seeking an alternative to the on-site land dedication requirement the opportunity to choose between making an off-site capital improvement or paying impact fees in lieu of that *off-site* capital improvement, the Gorham Ordinance simply offers one option- the payment of impact fees. Although not expressly stated in the Ordinance, given that the impact fees collected under the Ordinance are to be used solely for off-site recreational infrastructure, it can

11

be inferred that the impact fees are charged in lieu of requiring off-site construction as prescribed by § 4354. Hence, the Ordinance is governed by § 4354.

Given that the fees charged are impact fees under § 4354, the Ordinance must meet the requirements set forth in § 4354(2). Section 4354(2) provides:

> 2. Restrictions. Any ordinance that imposes or provides for the imposition of impact fees must meet the following requirements.
>
>> A. The amount of the fee must be reasonably related to the development's share of the cost of infrastructure improvements made necessary by the development or, if the improvements were constructed at municipal expense prior to the development, the fee must be reasonably related to the portion or percentage of the infrastructure used by the development.
>>
>> B. Funds received from impact fees must be segregated from the municipality's general revenues. The municipality shall expend the funds solely for the purposes for which they were created.
>>
>> C. The ordinance must establish a reasonable schedule under which the municipality is required to use the funds in a manner consistent with the capital investment component of the comprehensive plan.
>>
>> D. The ordinance must establish a mechanism by which the municipality shall refund impact fees, or that portion of impact fees, actually paid that exceed the municipality's actual costs or that were not expended according to the schedule under this subsection.

30-A § 4354(2) (2003).

Plaintiffs assert that the Ordinance does not satisfy the requirements set forth in parts A, C, and D of § 4354(2). The court finds that the fees charged by Defendant are reasonably related to the Plaintiffs' developments' shares of the cost of infrastructure improvements made necessary by the developments and that § 4354(2)(A) has been satisfied. There is a nexus between subdivision development and the need for recreational space in Gorham. The fee charged for each lot in a residential subdivision is

12

reasonably related to the cost of improving parks and other open space that is made necessary by the development.  See Homebuilders Assn. of Bucks/Montgomery Counties Inc., v. Borough of Trappe, No. 90-3212, 1991 U.S. Dist. LEXIS 6019, at *43 (E.D. Pa. May 3, 1991).

However, as stipulated by both parties, the Ordinance fails to establish a schedule for the use of the collected fees and does not provide a means by which the unexpended fees would be refunded to developers. Def.'s Reply to Plfs.' Statement of Material Facts Not in Dispute, SMF ¶ 6, p. 2.   Therefore, the court grants Plaintiffs' Motion for Summary Judgment on Count I.

Given that the court has determined that all Plaintiffs, with the exception of Gilbert Homes, Inc., are barred from this action under the doctrine of *res judicata*, only Gilbert Homes, Inc. may recover under Count I. The court finds that Gilbert Homes, Inc. is entitled to a judgment of $16,000 , the amount paid to Defendant under the Ordinance, as well as to interest and costs.

2.   Legality of Ordinance and Constitutional Claims

In Count II of their Second Amended Complaint, Plaintiffs assert that if the Ordinance is not the type provided for in 30-A § 4354, the Ordinance is illegal because 30-A § 4354 limits home rule authority in a manner that allows municipalities to enact impact fee ordinances only if those ordinances are of the type provided for in the statute.  In addition, Plaintiffs allege that the Ordinance is a violation of their constitutional due process and equal protection rights.  Finally, Plaintiffs claim that the Ordinance amounts to a taking under the Maine and Federal Constitutions.

A. Legality of Ordinance

In making a determination on Count I of Plaintiffs' complaint, the court established that the Ordinance  falls under 30-A § 4354.  Therefore, the court does not consider the argument that the Ordinance  is illegal on the ground that it is an impact

13

fee ordinance enacted outside of the home rule authority granted to municipalities under 30-A § 4354.

B. Due Process Claims

The Law Court has held that an ordinance is generally a valid exercise of a municipality's police powers provided the ordinance does not violate the Due Process Clauses of the Maine and United States Constitutions.[8] Ferraiolo Constr. Co. v. Town of Woolwich, 1998 ME 179, ¶ 9, 714 A.2d 814, 817 (citing LaBay v. Town of Paris, 659 A.2d 263, 266 (Me. 1995)). The Due Process clauses in both constitutions require "(1) that a municipality's exercise of police power provide for the public welfare (2) that the legislative means employed are appropriate to achieve the ends sought and (3) that the manner of exercising the power is not unduly arbitrary or capricious." Id., 1998 ME 179, ¶ 9, 714 A.2d at 817 (citing Nugent v. Camden, 1998 ME 92, ¶ 18, 710 A.2d 245, 249); State v. Rush, 324 A.2d 748, 753 (Me. 1974). Ordinances are generally cloaked with a presumption of constitutionality. Id.,1998 ME 179, ¶ 9, 714 A.2d at 817 (citing F.S. Plummer Co., 612 A.2d at 859 (Me. 1992)); Putnam v. Town of Hamden, 495 A.2d 785, 787-88 (Me. 1985); Penobscot Area Housing Dev. Corp. v. City of Brewer, 434 A.2d 14, 23 (Me. 1981).

In the case at bar, all three Due Process requirements have been met. First, the municipality is using its police power to provide for the public welfare by preserving recreational space in Gorham. Second, the Ordinance is an appropriate means to achieve that end. See Associated Home Builders, Inc. v. Walnut Creek, 484 P.2d 606, 615 (Cal. 1971) (upholding a statute that authorized the governing bodies of cities or counties to enact ordinances requiring the dedication of land, the payment of fees in lieu therof, or a combination of both, for park or recreational purposes as a condition to the approval of a final subdivision map); Jenad, Inc. v. Village of Scarsdale, 218 N.E. 2d 673

14

(N.Y. 1966) (upholding a statute which required, as a condition precedent to the approval of subdivision plats which show new streets or highways, that the subdivider allot some land within the subdivision for park purposes or, at the option of the village planning board, pay the village a fee in lieu of such allotment); Jordan v. Village of Menomonee Falls, 137 N.W. 2d 442, 501 (Wisc. 1965) (upholding an ordinance that required developers to dedicate a certain portion of each subdivision for school, park, and recreational needs or to pay an equalization fee per lot in lieu of the dedication); but see Aunt Hack Ridge Estates, Inc. v. Planning Comm'n, 230 A.2d 45, 47 (Ct. 1967) (upholding the dedication requirement of a similar statute, but striking down the requirement that a fee be paid in lieu of dedication on the ground that its use was not confined for the benefit of the subdivision).

As explained by the Walnut Creek court:

> The rationale of the cases affirming constitutionality indicate[s] the dedication statutes are valid under the state's police power. They reason that the subdivider realizes a profit from governmental approval of a subdivision since his land is rendered more valuable by the fact of subdivision, and in return for this benefit the city may require him to dedicate a portion of his land for park purposes whenever the influx of new residents will increase the need for park and recreational facilities. Such exactions have been compared to admittedly valid zoning regulations such as minimum lot size and setback requirements.

Walnut Creek, 484 P.2d at 615 (citations omitted).

Finally, the $500 fee is not unduly arbitrary or capricious. See Borough of Trappe, No. 90-3212, 1991 U.S. Dist. LEXIS 6019, at *43 (holding that "it is not irrational or arbitrary for a municipality expecting growth, to impose certain fees on developers so that it may abate anticipated difficulties arising out of those developers' subdivision projects."). Given the nexus between subdivision development and the disappearance

---

[8] See Me. Const. art. I, § 6-A; U.S. Const. amend. XIV.

of open and recreational space, the imposition of exactions on all individuals who subdivide property for multi-lot developments survives constitutional scrutiny.

Once an ordinance passes the threshold tests for constitutionality, the party challenging the constitutionality of the ordinance bears the burden of "establishing the complete absence of any state of facts that would support the need for the enactment." F.S. Plummer Co., 612 A.2d at 859; Tisei v. Town of Ogunquit, 491 A.2d 564, 569 (Me. 1985). Here, Defendant has shown a legitimate basis for the enactment of the Ordinance: the need to promote and protect the availability of recreational facilities and open space in Gorham. The Town's Comprehensive Plan contains provisions regarding the town of Gorham's need and desire to promote and protect the availability of recreational facilities and open space in Gorham. DSMF ¶ 73.

In addition, the need for the ordinance is supported by a March 16, 1998 report by Gorham's Recreational Director, in which she indicated that "[a]s [Gorham] has grown over the past decade, the need for more playing fields and open space has increased" and that "'open space' in Gorham is disappearing at a steady rate of a minimum of 100+ acres per year." DSMF ¶ 74 In this same report, the Director concluded that

> [n]ew development is putting a terrific strain on existing facilities and resulting in the inability to keep up with the demand. While it is our mission to ensure that everyone ha[s] the opportunity to 'play,' the extent to which we will be able to meet that mission will be largely up to the availability of open space for active and passive recreation opportunities we commit to acquire and maintain.

Id. Given the existence of these material facts, which have been stipulated by both parties, Plaintiffs cannot claim that there are no facts supporting the need for the enactment. Thus, their Due Process claim cannot survive.

C. Equal Protection Claim

Plaintiffs' argument that the Ordinance denies them equal protection under the laws because Defendant charges a fee to owners of lots within subdivisions and not to owners of lots outside of subdivisions is also without merit. In general, legislation like the ordinance in the present case is presumed valid and will be upheld if the classification drawn by the statute is rationally related to a legitimate state interest. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985) (citations omitted). "When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude." Id. A party challenging a statutory classification that does not affect fundamental rights or draw upon distinctions based upon a suspect class bears the burden of establishing that there is no rational basis for the classification. Peters v. Saft, 597 A.2d 50, 52 (Me. 1991) (citations omitted); Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 145 (1st Cir. 2001) (citations omitted). Once it is established that a classification is *prima facie* violative of equal protection, the government then bears the burden of establishing that there is a rational basis for the classification. Vella v. Town of Camden, 677 A.2d 1051, 1054 (Me. 1996). Where an ordinance draws a classification in an arbitrary, irrational, or unreasonable manner, the ordinance must be found unconstitutional. Downey v. Wells Sanitary Dist., 561 A.2d 174, 176 (Me. 1989).

Here, Plaintiffs have not made a *prima facie* case that the Ordinance is violative of equal protection. The Law Court has held that equal protection law does not require towns to regulate all lots in the same manner. Downey v. Wells Sanitary District, 561 A.2d 174, 176 (Me. 1989). In Downey, A defendant town's decision to impose a sewer impact fee on residential and commercial developments for which occupancy permits were issued after a certain date, was not held to violate equal protection laws. Id. Similarly, where a town is expecting increased growth, as is Gorham, there is a rational basis for compelling exactions from subdivision developers and not from non-

17

subdivision lots, as it is reasonable to assume that the town will need to abate certain negative impacts caused by the subdivisions. See Borough of Trappe, No. 90-3212, 1991 U.S. Dist. LEXIS 6019, at *43. Therefore, Defendant cannot be found to have violated Plaintiffs' equal protection rights.

D. Takings Claims

Plaintiffs assert that the Ordinance is an unconstitutional taking under state and federal law. Before discussing the substance of these takings claims, it is should be noted that Defendant incorrectly asserted that Plaintiffs' federal takings claim should be dismissed because it is not ripe for review. In a recent case involving state and federal takings claims, the Law Court reversed the lower court's erroneous dismissal of a federal takings claim. MC Assocs. v. Town of Cape Elizabeth, 2001 ME 89, ¶¶ 8-10, 773 A.2d 439, 442-43. In that case, as in the present case, the defendant relied on Williamson County Reg'l Planning Comm'n v. Hamiltion Bank, 473 U.S. 172, 186 (1985) to argue that until the plaintiffs had obtained a final decision from the lower court restricting the use of their property ("the finality prong") and had sought and been denied compensation from the state when state law provides such an avenue for relief ("the compensation prong"), their claim was premature. MC Assocs., 2001 ME 89, ¶ 9, 773 A.2d at 443.

In that case, the Law Court explained that if it allowed the lower court's dismissal to stand, "collateral estoppel would likely preclude the successful assertion of the federal claims in the subsequent action whether brought in state or federal court" Id. (citing Madeline J. Meacham, The Williamson Trap, 32 Urb. Law. 239, 239 (2000); Thomas E. Roberts, Ripeness and Forum Selection in Fifth Amendment Takings Litigation, 11 J. Land Use & Envtl. L. 37, 66-67 (1995)). It also held that "[a]lthough state takings claims must be resolved before a federal claim arises, they need not be resolved in separate proceedings in a state court." Id., 2001 ME 89, ¶ 10, 773 A.2d at 443.

18

With respect to Plaintiffs' state takings claim, the Maine Constitution states that private property cannot be taken for public use without just compensation. Me. Const. art. I, § 21. However, the Law Court has held that the government "is not required to pay a property owner every time it enacts a law that adversely affects property interests." MC Assocs., 2001 ME 89, ¶ 4, 773 A.2d at 441. The general takings rule does not apply when, "the government's physical occupation of private property constitutes a requirement imposed on a land owner as a condition for the government's approval of a land development application." Curtis v. Town of South Thomaston, 1998 ME 63, ¶ 4, 708 A.2d 657, 659 (citations omitted).

The United States Supreme Court has developed a two-part test for determining whether a land dedication requirement is logically related in substance and scope to legitimate regulatory objectives and thus a lawful exercise of the police power. This test has been adopted by the Law Court. Id., 1998 ME 63, ¶ 5, 708 A2d. at 659. The reviewing court must first determine whether there is an essential nexus between the legitimate government interest and the permit condition required by the government entity. Nollan v. California Coastal Comm'n, 483 U.S. 825, 837 (1987); Dolan v. City of Tigard, 512 U.S. 374, 386 (1994). In making this determination, the court looks at whether the permit condition "advances the same public aim as would the permit denial." Curtis, 1998 ME 63, ¶ 5, 708 A2d. at 659 (citing Nollan, 483 U.S. at 837; Dolan, 512 U.S. at 386). Second, the court must determine whether there is a rough proportionality between the conditions imposed and the effects the proposed land use will have on the community. Dolan, 512 at 388. The "rough proportionality" requirement cannot be satisfied by a conclusory statement made by a government authority. Id. at 396. Rather, it must be the product of a "determination that the required dedication is related both in nature and extent to the impact of the proposed development." Id. at 396.

In the case at bar, the Ordinance satisfies both prongs of the <u>Nollan/Dolan</u> test. First, there is a nexus between Gorham's legitimate interest in protecting and ensuring recreational opportunities for all of its residents and the dedication/fee requirement. The condition of the permit preserves recreational opportunities for all of Gorham's residents, by providing more recreational land for more citizens. Similarly, the denial of a permit preserves recreational opportunities for all of Gorham's residents by slowing the rapid growth that results from the construction of subdivisions and allowing Gorham citizens to enjoy the recreational opportunities already in existence. Even if the lots that would have been used for subdivisions become residences, the denial of the permit affords the town of Gorham more time to acquire additional open space and recreational land.

Second, there is a "rough proportionality" between the condition imposed and the effects of the proposed developments will have on the community. As discussed above, case law on point establishes that subdivisions inevitably end up taxing community resources and, therefore, compelling exactions from developers is reasonable. <u>See</u> <u>Borough of Trappe,</u> No. 90-3212, 1991 U.S. Dist. LEXIS 6019, at *43. In addition, the dedication requirements for subdividers are determined pursuant to a sliding scale, depending on average lot size.[9] The $500/lot fee is not a requirement imposed by the Ordinance, rather it is an option available at the developer's choice. Finally, the Ordinance only applies to residential subdivisions and not to commercial and industrial subdivisions, as the need for more recreational and open space is proportional to the number of residential subdivisions in the community.

---

[9] For example, under the ordinance, a lot over 80,000 square feet is required to reserve a minimum of 3% of the total parcel for recreational purposes, whereas a lot over 40,000 square feet and under 80,000 square feet must reserve a minimum of 4% of the total parcel for recreational purposes, and a lot up to 10,000 square feet must reserve a minimum of 13% of the total parcel for recreational purposes. <u>See</u> Code, ch. III(C)(4) at 166.

In sum, there has been no taking under Maine law. In addition, given that the Nollan/Dolan test also applies to takings under the United States Constitution, this court does not find that there has been a taking under federal law.

Given that the court finds all of Plaintiffs' claims in Count II unavailing and that Defendant is entitled to judgment on Count II as a matter of law, summary judgment on Count II is granted in favor of the Defendant.

The entry is

Plaintiffs' Motion for Summary Judgment for Count I is GRANTED as to Gilbert Homes and DENIED as to all other Plaintiffs.
Plaintiffs' Motion for Summary Judgment for Count II is DENIED.
Summary Judgment in favor of Defendant for Count II is GRANTED.

Dated at Portland, Maine this 26th day of September, 2003.

_____
Robert E. Crowley
Justice, Superior Court

SOLD INC. - PLAINTIFF

Attorney for: SOLD INC.
GREGORY CUNNINGHAM
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

DESIGN DWELLINGS, INC - PLAINTIFF

Attorney for: DESIGN DWELLINGS, INC
GREGORY CUNNINGHAM
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

SUSAN DUCHAINE  - PLAINTIFF

Attorney for: SUSAN DUCHAINE
GREGORY CUNNINGHAM
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

DANA LAMPRON-DISMISSED  - PLAINTIFF

Attorney for: DANA LAMPRON-DISMISSED
GREGORY CUNNINGHAM
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

JAMES SHAW  - PLAINTIFF

Attorney for: JAMES SHAW
GREGORY CUNNINGHAM
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

THOMAS SHAW  - PLAINTIFF

Attorney for: THOMAS SHAW
GREGORY CUNNINGHAM
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

BUSQUE AND DUCHAINE ASSOCIATES - PLAINTIFF

SUPERIOR COURT
CUMBERLAND, ss.
Docket No   PORSC-CV-2002-00362

**DOCKET RECORD**

Attorney for: BUSQUE AND DUCHAINE ASSOCIATES
GREGORY CUNNINGHAM
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029


PETER BUSQUE-DISMISSED  - PLAINTIFF


Attorney for: PETER BUSQUE-DISMISSED
GREGORY CUNNINGHAM
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029


GILBERT HOMES INC - PLAINTIFF


vs
GORHAM, TOWN OF - DEFENDANT


Attorney for: GORHAM, TOWN OF
MARK FRANCO
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630


Attorney for: GORHAM, TOWN OF
WILLIAM H DALE
JENSEN BAIRD ET AL
10 FREE STREET
PO BOX 4510
PORTLAND ME 04112


Attorney for: GORHAM, TOWN OF
SALLY DAGGETT
JENSEN BAIRD ET AL
10 FREE STREET
PO BOX 4510
PORTLAND ME 04112



Filing Document: COMPLAINT                  Minor Case Type: OTHER CIVIL
Filing Date: 07/25/2002


**Docket Events:**
07/25/2002 FILING DOCUMENT - COMPLAINT FILED ON 07/25/2002


07/25/2002 Party(s):  SOLD INC.
           ATTORNEY - RETAINED ENTERED ON 07/25/2002
           Plaintiff's Attorney: GREGORY CUNNINGHAM


           Party(s):  DESIGN DWELLINGS, INC