STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-075
GAB-YOR - 3/12/2004

NORTHERN SPRINGS, INC.,

Plaintiff

v.                                          ORDER

DONALD L. GARRISON
LAW LIBRARY

APR 15 2004

TOWN OF WELLS,

Defendant

Before this court is Plaintiff, Northern Springs, Inc.'s ("Northern") Motion for Summary Judgment as to Counts I and II of the Complaint, and Defendant, Town of Wells' ("Town") Motion for Summary Judgment as to all Counts of the Complaint. In addition, before this court is Plaintiff Northern's Motion to Strike specific portions of the affidavit of Jonathan Carter. For reasons stated below, Plaintiff's Motions are Denied, and Defendant's Motion is Granted.

## FACTS

Plaintiff Northern owns and operates a spring water plant located on Wire Road, Wells, Maine. Plaintiff Northern collects spring water at its spring sources on Wire Road and transports the water in bulk and in bottles to its customers. In order to enter or leave Plaintiff Northern's plant, it is necessary to use Wire Road.[1]

On or about April 2002, Defendant Town enacted Chapter 212 of the Code of the Town of Wells, an ordinance that adopted the State law regarding roadways in toto. Subsequently, Defendant Town became concerned that vehicles carrying loads in excess

---

[1] Defendant Town disputes this statement and indicates "Plaintiff failed or refused to consider several options proposed by the Town that would have precluded the need for it to rely on the Wire Road for access to its facility and/or would have alleviated the impact of the posting period on its business. (See Defendant's SMF at ¶ 4.)

of the weight restrictions imposed by state and local law would cause significant damage to Wire Road. Accordingly, the Town Ordinance was amended on September 3, 2002. Specifically, Defendant Town amended its ordinance by striking from it the portion of the State law that established a method to obtain certain exemptions. Hence, Defendant Town enforced its Wire Road restriction by having its police force stop and ticket certain over weight vehicles that attempted to access the road.

Consequently, Plaintiff Northern filed a Complaint in the York County Superior Court asserting five Counts against Defendant Town. First, Plaintiff Northern argues that State law preempts Defendant Town's ordinance requirements and that the ordinance is in violation of the Federal Supremacy Clause. Next, Plaintiff Northern contends that Defendant Town's ordinance is in violation of the Federal Commerce Clause and the State and Federal Due Process Clauses. Finally, Plaintiff Northern asserts that its use of Wire Road is a vested right and Defendant Town's ordinance is an *ex post facto* restriction on its use of the road.

On September 26, 2003, Plaintiff Northern filed a Motion for Summary Judgment as to Counts I and II against Defendant Town. In response, Defendant Town filed a Cross-Motion for Summary Judgment as to all Counts of the Complaint. Moreover, Plaintiff Northern filed a Motion to Strike specific portions of Jonathan Carter's affidavit.

## DISCUSSION

### 1. Plaintiff's and Defendant's Motion For Summary Judgment

A party is entitled to summary judgment where there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M. R. Civ. P. 56(c); Saucier v. State Tax Assessor, 2000 ME 8, ¶ 4, 745 A.2d 972. A material fact is one having the potential to affect the outcome of the suit. Kenny v. Dep't of Human

Services, 1999 ME 158, ¶ 3, 740 A.2d 560. A genuine issue exists when sufficient evidence supports a factual contest to require a fact finder to choose between competing versions of the truth at trial. Blanchet v. Assurance Co. of Am., 2001 ME 40, ¶ 6, 766 A.2d 71 (citation omitted).

## A. Count I

First, Plaintiff Northern asserts in Count I of its Complaint that the Town Ordinance conflicts with state law and frustrates its purpose and is therefore unlawful. More specifically, Plaintiff Northern argues that the ordinance conflicts with 29-A M.R.S.A. § 2395 et seq. and is preempted thereby.

> Just as federal laws may preempt state laws either expressly or by implication, *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 120 L. Ed. 2d 73, 112 S. Ct. 2374 (1992), state statutes may preempt local ordinances either expressly or implicitly, *see* 30-A M.R.S.A. § 3001. Maine's statute extending home rule, as provided by the Maine Constitution, indicates that a municipality may adopt any ordinance or exercise any power or function which is not denied expressly or by clear implication. It includes the following standard for determining when an ordinance may be preempted by implication: the Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law. The determinative factor is, therefore, whether the ordinance would frustrate the purpose of any state law. We will view municipal action as preempted only when the application of the municipal ordinance prevents the efficient accomplishment of a defined state purpose.

Smith v. Town of Pittston, 2003 ME 46, ¶ 24, 820 A.2d 1200, 1207 (citations and quotations omitted).

Title 29-A M.R.S.A. § 2395, provides in relevant part that "[t]he Department of Transportation may restrict the weight or passage of any vehicle over any way when, in its judgment, such passage would be unsafe or likely to cause excessive damage to the way or bridge." 29-A M.R.S.A. § 2395(1) (2003). "The Department of Transportation may designate state and state aid highways and bridges over which restrictions on

3

gross weight, speed, operation and equipment apply during periods of the year determined by the Department." Id. at § 2395(3). Furthermore, "County commissioners and municipal officers may designate public ways other than those in subsection 3 and impose restrictions within their respective jurisdictions similar to those made by the Department of Transportation under subsection 3." Id. at § 2395(4).

In addition, 30-A M.R.S.A. § 3001, provides:

Any municipality, by the adoption, amendment or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general law or charter.

**1. Liberal construction.** This section, being necessary for the welfare of the municipalities and their inhabitants, shall be liberally construed to affect its purposes.

**2. Presumption of authority.** There is a rebuttable presumption that any ordinance enacted under this section is a valid exercise of a municipality's home rule authority.

**3. Standard of preemption.** The Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law.

**4. Penalties accrue to municipality.** All penalties established by ordinance shall be recovered on complaint to the use of the municipality.

30-A M.R.S.A. § 3001 (2003).

Here, the stated purpose of the amended ordinance is to "prevent damage to streets and bridges in the Town which may be caused by vehicles of excessive weight, to lessen safety hazards and the risk of injury to the traveling public, to extend the life expectancy of Town streets and bridges, and to reduce the public expense of their maintenance and repair . . ." (Defendant's SMF Exh. M.) This court finds that the purpose of the State statute has not been frustrated and instead the two provisions are

4

consistent with each other.

Although, Plaintiff Northern argues that the amended ordinance frustrates the purpose of the state law by removing from it the State's exemptions, this court disagrees. The State exemptions,[2] although different from Defendant Town's exemptions[3] are not frustrated. In fact, the States exemptions are similar to the amended ordinance. Therefore, because no genuine dispute of material fact exists, this court finds that the ordinance does not frustrate the purpose of State law and accordingly is not preempted.

## B. Count II

Next, Plaintiff Northern alleges in Count II of its Complaint that the ordinance conflicts with Federal law and is a violation of the Supremacy Clause of the United States Constitution.

The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land. . ." U.S. Const., Art. VI, cl. 2.

> We have recognized that it is through operation of the supremacy clause of the United States Constitution that federal law preempts conflicting state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, when there is an outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. Nevertheless, the United States Supreme Court has determined that the

---

[2] (See Defendant's SMF Exh. E.)

[3] "When temperature and road conditions warrant a relaxation of the weight limits imposed and posted in accordance with the section 212-4, the Road Commissioner or his designee may authorize the operators of vehicles whose gross registered weight exceeds the posted weight limited for a road or group of roads to operate their vehicles for the specified day or a portion of the day. Any such exemption shall apply to all vehicles that request the waiver." (Defendant's SMF at Exh. K.)

"exercise of federal supremacy is not lightly to be presumed. In *Fort Halifax Packing*, we stated: Preemption, however, is not a favored concept, and federal regulation will be deemed to be preemptive of state regulatory powers only if grounded in persuasive reasons -- either the nature of the regulated subject matter permits no other conclusion or that Congress has unmistakably so ordained.

Central Maine Power Co. v. Lebanon, 571 A.2d 1189, 1191-92 (Me. 1990) (citations and quotations omitted). Plaintiff Northern argues that 23 C.F.R. 658.19 preempts the Defendant Town's ordinance. This section provides, "[n]o state may enact or enforce any law denying reasonable access to vehicles . . . between the NN [National Network] and terminals and facilities for food, fuel, repairs and rest." (Defendant's SMF at Exh. B.)[4]

In the case at bar, Plaintiff Northern's "trucks regularly access the interstate highway system from their terminal by traveling along the Wire Road to Route 109, then to I-95. The intersection of Wire Road and Route 109 is located approximately 5 miles from the entrance to Interstate 95." (Defendant's SMF at ¶ 29.) Since Plaintiff Northern may be denied "reasonable access", it is necessary to determine if Defendant Town's ordinance conflicts with 23 CFR 658.19. See New Hampshire Motor Transport Ass'n v. Town of Plaistow, 67 F.3d 326, 329 (1st Cir. 1995) (holding that the Town ordinance placing a night-time curfew was a reasonable method to accomplish the goal of curbing noise, odor as well as dust, and did not violate 23 CFR 658.19 and other federal laws.)

Likewise, in this case, Defendant Town has a legitimate interest in limiting travel over Wire Road during the spring thaw. This interest includes, preventing road damage and limiting costs for the Town's taxpayers. Furthermore, Plaintiff Northern was only denied access from March 4, 2003 to April 16, 2003. During and prior to this

---

[4] The U.S. Department of Transportation wrote a letter to Plaintiff Northern indicating that its legal staff has determined that this Federal law cannot override the State and Local laws. (See Defendant's SMF Exh. C.)

time, Defendant Town attempted to accommodate Plaintiff Northern. These accommodations included, having a Town representative available to Plaintiff Northern on a 24-hour per day basis to advise whether Wire Road could be used. (Defendant's SMF at ¶ 33.) In addition, Town Selectmen "held a workshop to address Northern Springs' concerns. The Board of Selectmen made several suggestions about how Northern Springs could continue its operations during the posting period." Id. at ¶ 35. Options included Plaintiff Northern using smaller trucks during the posted period, the possibility of building a bridge or pipeline from its property to Route 99, and the possibility of purchasing water from the Kennebunk, Kennebunkport and Wells Water District in order to satisfy its spring contracts. Id. at ¶¶ 30, 35.[5]

Also, Plaintiff Northern should have known that Wire Road was posted prior to its commencing of its business operations, because it had been posted every year since 1992. Id. at ¶ 26. Consequently, this court finds that no genuine issue of material fact is in dispute and therefore summary judgment should appropriately be granted for Defendant Town as to Count II.

## Count III

In Count III, Plaintiff Northern argues that Defendant Town's ordinance violates the Commerce Clause of the United States Constitution. The Commerce Clause empowers Congress to regulate commerce and those activities affecting commerce between the states. See Art. I, § 8, cl. 3. The Commerce Clause, however, also prohibits states from regulating interstate commerce. This restriction is not absolute, however,

---

[5] Plaintiff Northern qualifies these statements by Defendant Town by stating, "the only alternatives that the Town suggested at the meetings were to build a new road, or to build a bridge or pipeline. These suggestions were not reasonable alternatives to the use of Wire road. Northern Springs, Inc. suggested to the Town that it would put up a bond to pay for any repairs to damage caused by its use of the Wire Road. This suggestion was reasonable, but was rejected by the Town." (Plaintiff's SMF at ¶ 30.) In addition, "Northern Springs, Inc. informed the Town that purchase of water from other sources was usually precluded because the purchasers of spring water require a specific identifying 'DNA' of the water to match that of the spring water from Northern Springs source." Id. at ¶ 35, although this assertion is not supported by a record reference.

and "the States retain authority to regulate matters of legitimate local concern, even though interstate commerce may be affected." Pharmaceutical Research and Manufacturers of America v. Concannon, 249 F.3d 66 (1st Cir. 2001). Accordingly, if the state statute in question clearly discriminates against out-of-state business then this is considered a per se ban. However, "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree." Pike v. Bruce, 397 U.S. 137, 142, 90 S. Ct. 844, 847, 25 L. Ed. 2d 174, 178 (1970).

First, in the case at bar, the questioned ordinance does not discriminate. Instead, it applies to all trucks over the requisite weight. Accordingly, the *Pike* "balancing test" applies to this case. See New Hampshire Motor Transport Ass'n, 67 F.3d at 332-33 (holding, without analysis, that the *Pike* test was applicable to the road regulation ordinance in question, because it did not discriminate against interstate commerce.)

Plaintiff Northern asserts that the *Pike* test is not satisfied. First, Plaintiff Northern argues that there is a discriminatory motive underlying the ordinance. (See Plaintiff's Opposition to Motion For Summary Judgment at 3.) Defendant Town, however, argues that the first prong of the test is satisfied because "every business whether local or out-of-state regardless of the materials involved is subject to the amended ordinance." (Defendant's Memorandum of Law in Support of Defendant's Motion For Summary Judgment at 4.)

Next, both parties concede that the second prong is met. This is because, reducing the wear and tear on local roads and saving taxpayer money is a legitimate governmental purpose.

Plaintiff Northern also contends that the third element of the test is not fulfilled. More specifically, Plaintiff Northern argues that the ordinance burdens interstate commerce directly by affecting its interstate customers and trucking companies it hires to deliver its products. Defendant Town, on the other hand, asserts that the only burden imposed on interstate commerce is incidental in nature.

Finally, Plaintiff Northern cites that the fourth prong of the test is also not satisfied. More specifically, Plaintiff Northern argues that the burden of the ordinance is greater than the local benefits. In addition, Plaintiff Northern asserts that this task can be accomplished without placing a burden on interstate commerce. Conversely, Defendant Town states that the "[t]he fact that the Plaintiff's business was inconvenienced for a relatively brief period of time cannot be said to excessively burden interstate commerce when compared against the potential benefits to the Town." (See Defendant's Memorandum of Law In Support of Defendant's Motion for Summary Judgment at 5.)

Although Plaintiff Northern asserts that the ordinance is discriminatory because it allows emergency vehicles to traverse Wire Road and because Defendant Town failed to provide reasonable alternatives, permits and/or exemptions in its ordinance, this court disagrees. Plaintiff Northern fails to present any evidence of Defendant Town's discriminatory behavior and the exemption for essential services vehicles to traverse roads subject to the weight limitation is to aid the public. That way the public will not be deprived of fire, ambulance, heat and electricity services. Thus, applying the *Pike* "balancing test" this court finds that the ordinance regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental. See Pike, 397 U.S. at 142.

9

## D. Count IV

Defendant Town argues that the ordinance does not violate Plaintiff Northern's due process rights under the United States and Maine Constitutions.

> Whether the ordinance at issue is valid presents a question of law. We review questions of law de novo. An ordinance is ordinarily a valid exercise of a municipality's police powers provided the ordinance does not violate the Due Process Clauses of the Maine and United States Constitutions. These Clauses require (1) that a municipality's exercise of police power provide for the public welfare (2) that the legislative means employed are appropriate to achieve the ends sought and (3) that the manner of exercising the power is not unduly arbitrary or capricious. The ordinance is cloaked with a presumption of constitutionality, *see F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856, 859 (Me. 1992), and Ferraiolo, as the party challenging the ordinance, had the burden of establishing the complete absence of any state of facts that would support the need for the enactment.

Ferraiolo Constr. Co. v. Town of Woolwich, 1998 ME 179, ¶ 9, 714 A.2d 814, 817 (citations and quotations omitted).

Here, Defendant Town's ordinance provides for the public welfare by attempting to prevent damage to streets, which may be caused by vehicles of excessive weight. Furthermore, this requirement will lead to increased safety and decrease the risk of injury to the traveling public. (See Defendants SMF at Exh. M.) Next, Defendant Town asserts that the legislative means are appropriate to meet the end sought, because it only temporarily limits access for a few weeks during the spring. Finally, Defendant Town argues that Plaintiff Northern cannot meet its burden of establishing that the ordinance amendments were arbitrary and capricious.

Plaintiff Northern, however, contends that the means employed to obtain the object of the ordinance were not valid. Instead, Plaintiff Northern asserts that the enactment of this discriminatory ordinance is an equal protection violation and an unconstitutional taking of its property.

If the amendments were enacted for a valid purpose, and courts will not inquire into the motives of municipal legislative bodies for the influences under which they act. Dobbs v. Maine school Admin. Dist. No. 50, 419 A.2d 1024, 1029 (Me. 1980) (citation omitted). Here, the temporary imposition of weight restrictions during the spring thaw to prevent road damage is a valid purpose. Accordingly, it is necessary to determine if the means employed to achieve this goal were valid.

> [The] courts will not inquire into the motives of legislators in passing or doing an act, where the legislators possess the power to pass or do the act and where they exercise that power in a mode prescribed or authorized by the organic law. Therefore, *neither the motives of the members of a municipal legislative body nor the influences under which they act can be shown to nullify an ordinance duly passed in legal form, within the scope of their powers.* In such case the doctrine is that the legislators are responsible only to the people who elect them.

Dobbs v. Maine School Admin. Dist. No. 50, 419 A.2d 1024, 1029 (Me. 1980) (citations omitted.) Therefore, this court finds that it is unable to look into the motive and reasoning behind Defendant Town's amendment of the applicable ordinance.[6]

Next, Plaintiff Northern contends that the amended ordinance constitutes a taking without just compensation. Both the Maine and the United States Constitutions prohibit government from taking private property for public use without paying just compensation. "[W]hile property may be regulated to a certain extent, if regulation goes too fair it will recognized as a taking." Seven Islands Land Co. v. Maine Land Use Regulation Comm'n, 450 A.2d 475, 482 (Me. 1982). In order to prevail on this claim, Plaintiff Northern must demonstrate that Defendant Town's action has "rendered the property substantially useless and stripped it of all practical value." M.C. Associates v. Town of Cape Elizabeth, 2001 ME 89, ¶ 11, 773 A.2d 439, 443 (citations and quotations

---

[6] However, a constitutional equal protection violation can be based on selective enforcement of a statute if the party establishes that it "had a discriminatory effect and that it was motivated by a discriminatory purpose." Polk v. Town of Lubec, 2000 ME 152, ¶ 14, 756 A.2d 510, 513.

11

omitted.)

Here, Plaintiff Northern's business was temporarily interrupted for a few weeks. Plaintiff Northern asserts, however, "[d]uring the period that Wire Road has these posted restrictions, Northern Spring's Inc. is unable to transact its business." (Plaintiff's SMF at ¶ 12.) In contrast, Defendant Town denies this allegation and contends that "Plaintiff could, and did fulfill its contracts during the posting period." (Defendant's SMF at ¶ 12.)[7] In sum, Plaintiff Northern cannot establish by irrefutable evidence that Defendant Town's ordinance constitutes an impermissible taking without just compensation. As a result, this court finds that Defendant Town is entitled to summary judgment as to Count IV.

**Count V**

Finally, Defendant Town asserts that Plaintiff Northern did not acquire vested rights in the unfettered use of the Wire Road prior to the adoption of the ordinance. Plaintiff Northern argues, however, that Defendant Town was aware of its commercial use of the property, and it obtained unfettered right to use Wire Road prior to the enactment of the amended ordinance.

Existing regulations "create no vested rights in a property owner because all property is held in subordination to the police power." Thomas v. Zoning Board of Appeals of the City of Bangor, 381 A.2d 643, 647 (Me. 1978) (citations and quotations

---

[7] "Q Well, you said you lost out on their contract, correct?
A I didn't say I lost it, no. You said in jeopardy."
(Cimino Dep. at 97, lines 7-10.)
Q "In addition to the one that we were just talking about, were there other – how many others [contracts] were there that you were unable to fulfill?
A There is one other.
Q And is that similarly subject to confidentiality with respect to the name of who that is?
A No.
Q Could you give me a copy of this substantial contract? And what I am looking for specifically is how much you were to supply and how much you were unable to supply as a result of the road closings.
A We made that up from another source."
(Cimino Dep. at 101, lines 13-25.)

12

omitted.) Here, Defendant Town is expressly vested with the power to impose use restrictions on local roads. See 29-A M.R.S.A. § 2395(4) (2003). Accordingly, this court finds that the prior ordinance did not provide Plaintiff Northern with any vested rights.

In addition, Plaintiff Northern further asserts that it obtained vested rights based on a letter sent to the former proprietor of the spring water operation in July 2001. This letter stated that "[w]e have concluded that [your] commercial spring water extraction, storage, bottling and transportation operations . . . constitutes a lawfully-existing nonconforming use of the Property, and may continue to operate subject to the provisions of the Code of the Town of Wells governing nonconforming uses." (Defendant's SMF, Exh. 1.)

This letter was sent to the former proprietor regarding his question about whether his operation constituted a lawful nonconforming use, not regarding its use of Wire Road. Moreover, "the right to use the highways for business is not inherent or vested but in the nature of a special privilege which the State [or town], through the Legislature, may condition, restrain, extend or prohibit." Steves v. Robie, 139 Me. 359, 363, 31 A.2d 797, 799 (Me. 1943) (citations omitted).

Finally, Plaintiff Northern argues that this ordinance is an unlawful *ex post facto* law, because it attempts to take its vested property rights away. *Ex post facto* laws are constitutionally prohibited. "A [] statute will violate these constitutional prohibitions of ex post facto legislation only if: i) the new statute punishes as a crime an act that was innocent when done, or ii) if it makes more burdensome the punishment for a crime after its commission, or iii) if it deprives one charged with crime of a defense available according to law at the time the act was committed." State v. Chapman, 685 A.2d 423, 424 (Me. 1996).

In the present case, Plaintiff Northern has failed to demonstrate that it had vested rights prior to the enactment of the amended ordinance. Moreover, although Plaintiff Northern argues that it has been deprived of a defense that was available to it before, this court disagrees. This is because the available defense must have been available to Plaintiff Northern "according to the law at the time the act was committed." Id. Here, the amended ordinance was in effect in September 2002, prior to Plaintiff Northern's infractions, which occurred in the spring of 2003. Consequently, this law is not an *ex post facto* law.

Therefore, based on these facts, this court finds that Defendant Town is entitled to summary judgment as to Count V.

### 2. Plaintiff Northern's Motion to Strike

Plaintiff Northern moves to strike certain portions of Defendant Town's submissions filed in support of its opposition to its Motion for Summary Judgment and in support of its Motion for Summary Judgment. More specifically, Plaintiff Northern seeks to strike paragraphs 6, 12, 13, 16, 17 and 18 of Jonathan Carter's affidavit, because they are hearsay and not based on personal knowledge. Similarly, Plaintiff Northern seeks to strike exhibits C and L for the identical reasons. Defendant Town, however, argues that the disputed portions of Jonathan Carter's affidavit and exhibits C and L are all properly admissible into evidence and comply with the Rules of Civil Procedure.

Jonathan Carter is the Town Manager. In his affidavit he asserts several facts that although within his duties as Town Manager, are not based on his personal knowledge and are hearsay. However, Defendant Town, to rectify these inadequacies, submitted supplemental affidavits of Richard T. Connelly and Edgar P. Moore, who do possess personal knowledge regarding the statements that Jonathan Carter made in his affidavit. Therefore, this argument is moot.

14

In regard to the disputed exhibits C and L, they are both admissible. Exhibit C is a letter from the U.S. Department of Transportation opining that federal law cannot be used to override local seasonal weight restrictions on posted roads. This exhibit, Defendant Town argues, is not being offered for the truth of matter asserted in it, but instead to establish the fact that Plaintiff Northern has unsuccessfully lobbied both the State and Federal governments, as indicated in Jonathan Carter's affidavit. Accordingly, this court should find that this exhibit does not constitute hearsay.

Next, exhibit L is a memo from a contractor to the Assistant Road Commissioner Edgar P. Moore, quoting a price to improve Wire Road. This memorandum, Defendant Town asserts, is not being submitted for the truth of the matter asserted, but instead to confirm the attempts to provide Plaintiff Northern with alternatives that would allow it to conduct its business during the posting period.

WHEREFORE, this court **DENIES** Plaintiff Northern's Motion for Summary Judgment and Motion to Strike. However, this court **GRANTS** Defendant Town's Motion for Summary Judgment.

Dated:        March 12, 2004

G. Arthur Brennan
Justice, Superior Court


James Noucas, Esq. - PL
Mark Sullivan, Esq. (pro hac vice) - PL
Durward Parkinson, Esq. - DEF